UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Huff, Chaffin and Decker
Argued at Richmond, Virginia


ROBIN LAVINNIA MINES

                                                MEMORANDUM OPINION[*] BY
v.       Record No. 1787-12-2                   JUDGE MARLA GRAFF DECKER
                                                FEBRUARY 25, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

Kathleen M. Dwyer, Qualified Third Year Practitioner (Cullen D.
Seltzer; Sands Anderson PC, on briefs), for appellant.

Alice T. Armstrong, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Robin Lavinnia Mines (the appellant) was convicted of robbery and first-degree murder in

violation of Code §§ 18.2-58 and 18.2-32.  On appeal, she contends that the trial court erred in

denying her proffered jury instruction defining the intent to steal.  The trial court did not abuse its

discretion in refusing the proffered jury instruction.  Therefore, we affirm the appellant's robbery

conviction.

## I.  BACKGROUND

The appellate court, when considering a trial court's refusal to give a proffered jury

instruction, views "'the evidence with respect to the refused instruction in the light most favorable'

to the appellant."  Woolridge v. Commonwealth, 29 Va. App. 339, 348, 512 S.E.2d 153, 158 (1999)

(quoting Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992)).  Viewed

under this standard, the evidence is as follows.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On December 24, 2011, Jamal Clemons went to the home of Edward Bowmer (the victim) to steal money from a safe the victim kept in his home. When Clemons arrived, the victim and the appellant, Clemons' mother, were there, getting ready to smoke crack cocaine together.

A little later that day, Amber Deaton, a family friend of the victim, drove to the victim's house to pick him up for an out-of-town trip. When Deaton arrived at the victim's door, Clemons grabbed her and pulled her into the residence. Clemons looked at the appellant and asked her if she knew Deaton. The appellant confirmed she knew Deaton, and Clemons ordered Deaton to sit down.

Clemons searched for ten thousand dollars he heard the victim kept in his home. He became irate when he couldn't find it, and started yelling. Throughout Clemons' tirade, the appellant calmly sorted through the victim's jewelry, trinkets, and other belongings and put them into a pillowcase until it was stuffed so full she had trouble carrying the sack. After failing to find the large sum of money he wanted, Clemons told the appellant and Deaton it was time to leave. Before Deaton exited the house, she saw Clemons shoot the victim.

The appellant fled to her cousin's house. She hid the pillowcase containing the victim's belongings there. Police officers found the appellant on the back porch of her cousin's home later that evening.

At trial, the Commonwealth's theory of the case was that the appellant was guilty of robbery and the subsequent murder of the victim because she acted in concert with Clemons. The appellant testified on her own behalf, claiming that she did not plan to commit robbery or murder. She told the jury that she feared for her life and that she followed her son's orders so that he would not shoot her. According to the appellant, the victim was her friend. She claimed that she did not intend to permanently deprive him of his belongings, but instead, planned to return the items to him.

Clemons also testified at trial on his mother's behalf and said that he would have killed her if she had not assisted him in the robbery.[1]

The appellant was convicted of robbery and first-degree murder. She was sentenced to five years in prison for the robbery and twenty years in prison for the murder. This appeal followed and is limited to the issue of whether the trial court erred by denying the appellant's jury instruction defining the "intent to steal."[2]

## II. ANALYSIS

The appellant argues that the trial court abused its discretion by refusing her proposed jury instruction defining the intent to steal because she testified that she did not possess the requisite *animus furandi*, namely the intent to permanently deprive the victim of his belongings. See Pierce v. Commonwealth, 205 Va. 528, 532-33, 138 S.E.2d 28, 31 (1964) (defining the term *animus furandi*). She suggests that because proving that she had the "intent to permanently deprive" at the time she took the victim's property was key to proving the robbery charge against her, the trial court's refusal to give the instruction denied the jury the legal basis with which to acquit her of that charge. We disagree for the reasons that follow.

---

[1] Clemons' testimony and that of the appellant differed greatly from the testimony of Deaton, who observed the appellant calmly placing items into a pillowcase while Clemons kept the gun pointed toward Deaton and the victim. Deaton never heard Clemons threaten the appellant. Additionally, although the appellant was very emotional at trial, Deaton testified that on the day of the robbery and murder, the appellant was not hysterical, screaming or crying.

[2] The appellant raised three assignments of error in her petition for appeal. The first challenged the denial of her proffered jury instruction on intent to steal. The second challenged the use of a non-model jury instruction on concert of action as related to murder. The third challenged the sufficiency of the evidence to support her conviction for murder. Only the first assignment of error was granted. See McLean v. Commonwealth, 30 Va. App. 322, 329, 516 S.E.2d 717, 720 (1999) (*en banc*) ("Only those arguments presented in the petition for appeal and granted by this Court will be considered on appeal.). To the extent that any portion of the appellant's argument regarding the Commonwealth's concert of action theory and her murder conviction is before the Court, it is considered only within the context of the propriety of the trial court's decision regarding the proffered instruction defining intent to steal.

It is axiomatic that "'[t]he purpose of any jury instruction is to inform the jury of the law guiding their deliberations and verdict.'" Morgan v. Commonwealth, 50 Va. App. 120, 132, 646 S.E.2d 899, 905 (2007) (quoting Keen v. Commonwealth, 24 Va. App. 795, 807, 485 S.E.2d 659, 665 (1997)); see also Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) ("Our 'sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and the instructions cover all the issues which the evidence fairly raises.'" (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982) (alteration in original)). It is also well settled that "'[t]he trial judge has broad discretion in giving or denying instructions requested'" by either of the parties to the case. Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (en banc) (quoting John L. Costello, Virginia Criminal Law and Procedure § 60.6 to .8, at 810 (2d ed. 1995)).

A trial court, when instructing a jury, must provide a "simple, impartial, clear, concise statement of the law." Chapman v. Commonwealth, 56 Va. App. 725, 739, 697 S.E.2d 20, 28 (2010). Courts, however, are mindful that when an element of a crime is not clearly understandable that element must be defined by an instruction to the jury so that during deliberation the jury can properly determine whether the Commonwealth has met its burden. See Mason v. Commonwealth, 7 Va. App. 339, 346, 373 S.E.2d 603, 607 (1988) (when a definition is necessary to understand the elements of a crime, one must be given).

In the instant case, the record shows that the trial court carefully considered the jury instructions. The court spent time with counsel to ensure that the instructions were concise, understandable, and correct statements of the law.[3] Ultimately, the trial court granted numerous

---

[3] For example, the record shows that the trial court spent time working with counsel to craft the wording for the concert of action instruction.

instructions to aid the jury in its deliberations and in understanding the elements of the crimes charged. Those instructions included this instruction on robbery:

> The defendant is charged with the crime of robbery. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant intended to steal; and
>
> (2) That the defendant took personal property; and
>
> (3) That the taking was from Edward Bowmer, or in his presence; and
>
> (4) That the taking was against the will of Edward Bowmer; and
>
> (5) That the taking was accomplished by violence to the person; intimidation of the person; the threat of serious bodily harm; or the threat or presenting of a firearm.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty, but you shall not fix the punishment until your verdict has been returned and further evidence has been heard by you.
>
> If you find from the evidence that the Commonwealth has failed to prove beyond a reasonable doubt any one or more of the elements of that offense, then you shall find the defendant not guilty.

This jury instruction uses the exact language of the Model Jury Instructions. 2 Virginia Model Jury Instructions-Criminal, No. G47.100, at 47-3 (repl. ed. 2013).

Appellant's counsel offered an additional instruction defining the "intent to steal," one of the elements of robbery. The proffered jury instruction stated, "[t]he intent to steal means the the [sic] intent to permanently deprive the owner of his property." The trial court considered the instruction and noted that, "in all of the larceny and related offenses[, the model jury instructions] don't define stealing." The judge concluded that the meaning of the intent to steal is "common sense" and denied the instruction.

"Both the Supreme Court of Virginia and this Court have held that a trial court need not define terms . . . when the words 'are commonly used and each has an accepted meaning.'" Wells v. Commonwealth, 60 Va. App. 111, 123-24, 724 S.E.2d 225, 231 (2012) (quoting Clark v. Commonwealth, 220 Va. 201, 211, 257 S.E.2d 784, 790 (1979)). We have previously explained that jurors simply are not expected to leave their common sense at the doorstep of the courthouse. They are capable of understanding everyday principles and terms that are commonly known to the average individual. See Pearson v. Commonwealth, 60 Va. App. 549, 555, 729 S.E.2d 782, 785 (2012) ("[Jurors] may make use of their reason and common sense, and the knowledge and everyday experience gained by them in everyday life."). Here, when the trial court pointed out that the proffered definition in the instruction "would be common sense[,]" defense counsel agreed, stating, "That's why I submitted it, Judge." While the appellant's proposed jury instruction contains a correct definition of the intent to steal, this Court has previously found that a trial court does not "commit reversible error in 'rely[ing] upon the intelligence of jurors to give plain, ordinary words their plain, ordinary meaning.'" Wells, 60 Va. App. at 124, 724 S.E.2d at 231 (alteration in original) (quoting Parnell v. Commonwealth, 15 Va. App. 342, 347, 423 S.E.2d 834, 837 (1992)).

The jury understood from the given instructions that in order to convict the appellant of robbery, it had to find that she intended to steal the items that she collected in the pillowcase and removed from the victim's house. Although the jury inquired about another issue while deliberating, it posed no question about the element of intent to steal, nor did it ask for a definition of "steal." The record and Virginia law support the conclusion that the act of stealing is one that needs no additional explanation. Indeed, words far less common than "steal" have been deemed too ordinary for the law to require that they be defined for a jury. See, e.g., Clark, 220 Va. at 211, 257 S.E.2d at 790 (holding that the terms "outrageously or wantonly vile[,]"

- 6 -

"horrible or inhumane[,]" "depravity of mind or aggravated battery to the victim" were matters of common knowledge); Wells, 60 Va. App. at 123, 724 S.E.2d at 231 (holding that the terms "fraud" and "fraudulent" are plain, ordinary words commonly used in general discourse). Words and phrases similar in nature to "steal" and "intent to steal" have also been deemed self-explanatory. See, e.g., Chapman, 56 Va. App. at 739, 697 S.E.2d at 28 (holding that a jury may use its common sense to understand the meaning of the phrase "knowingly possess"). From the evidence in the record, we cannot conclude that the trial court abused its discretion in determining that the jurors were capable of understanding the plain meaning of "intent to steal" as requiring proof that the appellant intended to permanently deprive the victim of his belongings.

Further supporting this result is the principle that jury instructions must be read together and viewed as a whole. Blaylock v. Commonwealth, 26 Va. App. 579, 599, 496 S.E.2d 97, 107 (1998); Rollston v. Commonwealth, 11 Va. App. 535, 541, 399 S.E.2d 823, 826 (1991). In this case, the jury was fully instructed on the law. In addition to the robbery and concert of action instructions, the trial court provided, among others, instructions on the presumption of innocence and the inference that a person intends the natural and probable consequences of her acts. It also gave the appellant's proffered instruction on duress:

> If you find from the evidence that the defendant acted under duress, then you must find her not guilty. In order for the defendant to use the defense of duress, you must find from the evidence that she was threatened, and that she had a reasonable fear of imminent death or serious bodily injury. The defense of duress is not available if the defendant has a reasonable opportunity to avoid committing the crime without being harmed.

This duress instruction, in combination with the others, permitted the appellant's counsel to fully argue her theory of the case to the jury. This argument included recounting the appellant's testimony that she was under duress, feared for her life at the hands of her son, and did not intend to

steal the items but, instead, was keeping them for the victim. If the jury had accepted the appellant's evidence and determined that she acted under duress, it would necessarily also have found that she did not possess the *animus furandi* to commit the robbery. The jury had ample opportunity to acquit the appellant if it had determined that she lacked the requisite intent to steal the victim's possessions.[4] Thus, no additional instructions were necessary to support the appellant's theory of the case.

## III. CONCLUSION

The trial court fully and fairly instructed the jury and did not abuse its discretion in rejecting the appellant's proposed instruction defining the intent to steal. Consequently, we affirm the robbery conviction.

<u>Affirmed.</u>

---

[4] Indeed, the Commonwealth's own theory of the case regarding concert of action was susceptible to a verdict of not guilty if the jury did not believe that the defendant acted along with Clemons during the robbery.