COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick,[*] Judges Baker and Annunziata
Argued at Alexandria, Virginia


ERIC BLAYLOCK
                                            OPINION BY
v.   Record No. 1579-96-4         JUDGE ROSEMARIE ANNUNZIATA
                                         FEBRUARY 17, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                  Benjamin N. A. Kendrick, Judge

         Albert J. Ahern, Jr. (Louis Koutoulakos, on
         briefs), for appellant.

         Richard B. Smith, Assistant Attorney General
         (Richard Cullen, Attorney General, on brief),
         for appellee.


     Following a jury trial, appellant, Eric Blaylock, was

convicted of aggravated sexual battery upon a child less than

thirteen years of age in violation of Code § 18.2-67.3.  On

appeal, he contends that the trial court erred in making numerous

evidentiary rulings and when instructing the jury.  For the

reasons which follow, we reverse the decision of the trial court.

     The facts related here are limited to those pertinent to the

issues raised on appeal and they are set forth in the light most

favorable to the Commonwealth, the party prevailing below.

McBride v. Commonwealth, 24 Va. App. 603, 605-06, 484 S.E.2d 165,

167 (1997) (citing Martin v. Commonwealth, 4 Va. App. 438, 443,

358 S.E.2d 415, 418 (1987)).  After the Commonwealth brought

---

[*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

child pornography charges against appellant relating to materials transmitted through the Internet and found on a computer in appellant's home, Jana Starr brought charges against appellant for sexually molesting her several years earlier. The Commonwealth chose not to pursue the pornography charges, but indicted appellant for aggravated sexual battery on a child under thirteen.

Starr testified she was eleven years of age when she was sexually molested in 1985 by appellant, the half-brother of one of Starr's close friends at the time. Appellant was then twenty-four years old. He lived directly across the street from Starr and was described by her as a "big brother" figure.

Starr testified that appellant entered her home one evening when she was alone and offered her a backrub. Starr stated that after moving her bra and shirt aside, appellant pushed down her shorts and underpants and began to lick her back and then proceeded to rub her genitals. Penetration occurred when appellant partially inserted one of his fingers into her vagina. At the time, Starr never told anyone of the incident because she was embarrassed and because of the close relationship which existed between her and the appellant's church community. At trial, appellant denied the incident had occurred and presented an alibi defense.

The jury convicted appellant of the charge of aggravated sexual battery of a child under thirteen years of age. In

2

accordance with the jury recommendation, the court sentenced appellant to eight years imprisonment.

I.

Evidence Regarding Starr's Reputation for Truth

Appellant proffered the testimony of Starr's two former Arlington neighbors who would have testified that Starr's reputation in Arlington for truthfulness was bad. Starr last lived in Arlington in 1993. The trial court sustained the Commonwealth's objection to the evidence and restricted reputation evidence to the community in which Starr lived at the time of trial. We find the exclusion of the evidence to be reversible error.

In support of the trial court's exclusion of the evidence, the Commonwealth relies in part on Mohler v. Commonwealth, 132 Va. 713, 735, 111 S.E. 454, 461 (1922), which states that the "question to be investigated is the reputation of the witness for truth and veracity as of the time at which he testifies." The Commonwealth acknowledges that the fact the witness sought to be impeached no longer resides in a particular community does not per se bar reputation testimony from that community. See Clark v. Commonwealth, 202 Va. 787, 790-91, 120 S.E.2d 270, 273 (1961). Nevertheless, relying on Cantrell v. Superior Loan Corp., 603 S.W.2d 627, 639 (Mo. Ct. App. 1980), and State v. Thomas, 113 P.2d 73, 77 (Wash. 1941), the Commonwealth contends that "reputation evidence from a former community is admissible only upon a showing of a present connection with the community." The Commonwealth argues that, because Starr had no present connection

4

with the Arlington community, the evidence was properly excluded.

The question before us was settled in Brown v. Commonwealth, 147 Va. 660, 662, 137 S.E. 492, 492 (1927).  Citing Wigmore on Evidence[1] and reasoning from the premise that "a status once established is generally presumed to continue unchanged until the contrary is shown," the Virginia Supreme Court held that the remoteness of a witness' knowledge of reputation goes to its weight and not to its admissibility.  Id.  To be sure, the evidence "must not be so distant in time as to be void of real probative value in showing present character."  Id.

The determination of whether evidence is so remote as to be without probative value rests in the discretion of the trial court.  Id. at 662, 137 S.E. at 493.  While some authority in a minority of jurisdictions supports the exclusion of evidence of character established at a time other than the time of trial, Wigmore on Evidence notes that the minority position is "wholly incorrect on principle, because it is founded on a fallacious analysis of the problem [and it is further] objectionable in policy, because it excludes a class of evidence often meritorious in itself and sometimes the sole kind that is available." 2 Wigmore on Evidence § 928 (Chadbourne rev. 1970).

---

[1] "'On principle, the correct solution seems to be that prior character at any time may be admitted, as being relevant to show present character, . . . [t]he only limitation [being] . . . that the character must not be so distant in time as to be void of real probative value in showing present character . . . .'" Brown, 147 Va. at 662, 137 S.E. at 493 (quoting 2 Wigmore on Evidence § 928 (2d ed. 1923)).

The trial court's error in this case is one of law. In excluding the character evidence on the basis that it must concern the place "where she lives or where she works," the trial court applied the wrong standard to the evidence before it.

Our determination of whether the error is harmless is guided by familiar principles. Non-constitutional error "is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678) (emphasis added in Lavinder).

Applying the standard articulated in Lavinder, we cannot say that it plainly appears that appellant received a fair trial and that substantial justice was achieved. First, the Commonwealth's case rested in large measure on Starr's credibility. Second, the defense specifically stated in its opening statement that they intended to produce witnesses to establish the victim's bad reputation for truth and veracity, evidence which they should have been permitted to present. Finally, in her closing argument, the attorney for the Commonwealth stated, over defense objection, that the defense had promised to prove that the victim had a bad reputation for truth and veracity and that the defense had failed to do so. Accordingly, we find the error was not harmless and, on that basis, we reverse appellant's conviction and remand for a new trial, if the Commonwealth be so advised.

Although we reverse the conviction on this ground, we address the remaining issues raised on appeal as they may arise upon retrial.

## II.

### Admissibility of Pornographic Material

Prior to trial, the trial court ruled admissible several exhibits offered by the Commonwealth:  three exhibits were pornographic pictures involving children and two proposed exhibits consisted of stories taken from the defendant's computer portraying a fictional adult engaging in criminal and perverted sex with a child.  The Commonwealth ultimately sought the admission of only one of the stories into evidence.  The court reasoned that the exhibits were probative of appellant's lascivious intent in sexually assaulting Starr.

The Commonwealth also sought to have admitted a videotape taken from appellant's computer containing twenty-four pornographic pictures involving children.  Three of the videotape pictures duplicated the three already admitted in Exhibits 3, 4, and 5.  The court denied the motion, ruling that the prejudicial effect of presenting the video to the jury in the Commonwealth's case-in-chief outweighed its probative value.  However, when appellant denied during cross-examination that he had ever seen the pornographic pictures taken from his computer, the court, on its own motion and reasoning that appellant's response during cross-examination put his credibility with respect to his

knowledge of the pictures in issue, allowed the Commonwealth to play the videotape for the jury.

Appellant contends that the pornographic images and the sexually explicit story were improperly admitted.  Citing Brown v. Commonwealth, 3 Va. App. 182, 348 S.E.2d 849 (1986), and Bunting v. Commonwealth, 208 Va. 309, 157 S.E.2d 204 (1967), appellant argues the pornographic materials were not relevant to the determination of the intent at issue in the charged assault and that they were more prejudicial than probative.  He also argues that the videotape, composed of similar material, was improperly used for impeachment purposes.  We agree with both contentions.[2]

As a general rule, "other crimes" evidence has no probative value and is inadmissible.  See Guill v. Commonwealth, __ Va. __, __, __ S.E.2d __, __ (1998) (citing, inter alia, Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)); Bottoms v. Commonwealth, 22 Va. App. 378, 383, 470 S.E.2d 153, 156 (1996) (citing Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805).  However, "where the motive, intent, or knowledge of the accused is at issue, evidence of other offenses is admissible if it shows the conduct or attitude of the accused toward his

---

[2]Appellant also contends that the acquisition of the pornographic materials in question was too remote from the alleged offense to be probative of the issue of intent.  In light of our holding that the pornographic materials were erroneously admitted on the issue of appellant's intent, we do not address this argument.

victim, establishes the relationship between the parties, or negates the possibility of accident or mistake."  Moore v. Commonwealth, 222 Va. 72, 76, 278 S.E.2d 822, 824 (1981) (citing, inter alia, Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805).

In order to prove the charge of aggravated sexual battery in violation of Code § 18.2-67.3, the Commonwealth had to prove beyond a reasonable doubt that appellant had "sexually abuse[d] the complaining witness" and that "[t]he complaining witness is less than thirteen years of age."  "Sexual abuse" is "an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness' intimate parts."  Code § 18.2-67.10(6).  "Intent is the purpose formed in a person's mind that may, and often must, be inferred from the facts and circumstances in a particular case."  Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979); Jennings v. Commonwealth, 20 Va. App. 9, 17, 454 S.E.2d 752, 755 (citing Ridley, 219 Va. at 836, 252 S.E.2d at 314), aff'd, 21 Va. App. 328, 464 S.E.2d 179 (1995) (en banc) (mem.).

The Commonwealth must prove each element of a charged offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 315-16 (1979); Satterfield v. Commonwealth, 14 Va. App. 630, 636, 420 S.E.2d 228, 232 (1992) (en banc).  That principle of law, however, does not mean that the Commonwealth may always offer other bad acts to prove the intent of defendants accused of

specific intent crimes. If the Commonwealth's burden to prove intent were dispositive, "the general rule prohibiting introduction of prior bad acts to show character would never apply to specific intent crimes because intent would always be at issue." State v. Ives, 927 P.2d 762, 770 (Ariz. 1996).

Appellant maintained at trial that the incident reported by Starr never occurred. He introduced no evidence suggesting that the alleged sexual abuse took place without the requisite intent, or that the touching was the result of mistake or accident; instead, he denied the incident altogether and presented an alibi defense. The defense theory of the case did not relieve the Commonwealth of its burden to prove the element of intent. Estelle v. McGuire, 502 U.S. 62, 69 (1991); Essex v. Commonwealth, 18 Va. App. 168, 172, 442 S.E.2d 707, 710 (1994) (citing Pittman v. Commonwealth, 17 Va. App. 33, 35, 434 S.E.2d 694, 696 (1993)). However, the question before us is whether "other crimes" evidence is admissible on the issue of intent when intent is not genuinely in dispute. We hold that it is not admissible.

In Hill v. Commonwealth, 17 Va. App. 480, 486, 438 S.E.2d 296, 300 (1993), this Court set forth the principle which underlies our decision here:

> The Commonwealth . . . argu[es] that when intent is an element of the offense, prior offenses should be admissible. Intent was at issue here, as it is in most crimes. Kirkpatrick, Boyd, Eccles, and Donahue, all clearly indicate, however, that a significant nexus must exist between intent and the

10

> charge at hand. That nexus must be greater
> than a basic recitation of the fact that
> intent is an element of the crime. To
> conclude otherwise is to allow the exception
> in <u>Kirkpatrick</u> to swallow the general rule.

In <u>Hill</u>, we held that admission of prior bad acts evidence was reversible error because neither the Commonwealth's evidence nor the evidence presented by the defense put the matter of intent in controversy.[3]  <u>Id.</u> at 487, 438 S.E.2d at 300; <u>see also</u> <u>Reynolds v. Commonwealth</u>, 24 Va. App. 220, 225, 481 S.E.2d 479, 482 (1997) (citing <u>Foster v. Commonwealth</u>, 5 Va. App. 316, 323, 362 S.E.2d 745, 749 (1987)); <u>Tucker v. Commonwealth</u>, 17 Va. App. 520, 523–24, 438 S.E.2d 492, 494 (1993); <u>Foster</u>, 5 Va. App. at 323, 362 S.E.2d at 749 (citing <u>Henderson v. Commonwealth</u>, 5 Va. App. 125, 129, 360 S.E.2d 876, 878 (1987)); <u>Henderson</u>, 5 Va. App. at 129, 360 S.E.2d at 878.

The position articulated by this Court in <u>Hill</u> represents the decisional law of the majority of courts which have addressed

---

[3] <u>Jennings v. Commonwealth</u>, 20 Va. App. 9, 454 S.E.2d 752, <u>aff'd</u>, 21 Va. App. 328, 464 S.E.2d 179 (1995) (<u>en</u> <u>banc</u>) (mem.), relied upon by the Commonwealth, is not to the contrary. In <u>Jennings</u>, 20 Va. App. at 12, 454 S.E.2d at 753, the defendant was accused of abduction with the intent to defile. The Commonwealth's evidence showed that the defendant had tied a child to a bed with the intent to anally rape him. It also showed, through the testimony of the child who had been victimized, that the defendant explained that his purpose in tying the child to the bed was to punish him. <u>Id.</u> at 17, 454 S.E.2d at 756. Thus, the issue of intent was in genuine controversy, and this Court found admissible the evidence of the defendant's prior acts of sodomy. Consistent with the rule explained in <u>Hill</u>, 17 Va. App. at 487, 438 S.E.2d at 300, the evidence of "the prior offense was . . . necessary to show intent in the context of the Commonwealth's other evidence."

the issue.  See United States v. Jemal, 26 F.3d 1267, 1274 (3d Cir. 1994); United States v. Jenkins, 7 F.3d 803, 807 (8th Cir. 1993); United States v. Hernandez, 975 F.2d 1035, 1040 (4th Cir. 1992); United States v. Ortiz, 857 F.2d 900, 904 (2d Cir. 1988); State v. Ives, 927 P.2d 762, 770 (Ariz. 1996) (adopting Colon v. United States, 880 F.2d 650, 657 (2d Cir. 1989)); Howard v. United States, 663 A.2d 524, 528 n.6 (D.C. 1995) (citing, inter alia, Pounds v. United States, 529 A.2d 791, 795 n.6 (D.C. 1986)); Christian-Hornaday v. State, 649 N.E.2d 669, 671 (Ind. App. 1995) (citing Fisher v. State, 641 N.E.2d 105, 107 n.2 (Ind. App. 1994)); Emory v. State, 647 A.2d 1243, 1254-55 (Md. Ct. Spec. App. 1994); State v. Wallace, 943 S.W.2d 721, 724-25 (Mo. Ct. App. 1997) (citing State v. Conley, 873 S.W.2d 233, 237 (Mo. 1994) (en banc)); State v. Jones, 899 P.2d 1139, 1142 (N.M. Ct. App.), cert. granted, 898 P.2d 120 (N.M. 1995), cert. dismissed, 908 P.2d 750 (N.M. 1996); State v. Grubb, 675 N.E.2d 1353, 1356 (Ohio Ct. App. 1996); Johnson v. State, 932 S.W.2d 296, 302 (Tex. Ct. App. 1996); see also 1 McCormick on Evidence 809-10 (4th ed. 1992) ("[T]he issue on which the other crimes evidence is said to bear should be the subject of a genuine controversy.  For example, if the prosecution maintains that the other crime reveals defendant's guilty state of mind, then his intent must be disputed.").  But see United States v. Mazzanti, 888 F.2d 1165, 1171 (7th Cir. 1989); State v. White, 538 N.W.2d 237, 244 (S.D. 1995).

In appellant's trial, the "actual issue" was "'commission of the act itself,'" rather than appellant's intent in committing the act.  Reynolds, 24 Va. App. at 225, 481 S.E.2d at 482 (quoting Foster, 5 Va. App. at 323, 362 S.E.2d at 749).  Neither the Commonwealth's evidence nor that developed by the appellant puts the issue of intent in genuine dispute.  Cf. Jennings, 20 Va. App. at 17-18, 454 S.E.2d at 756.  The child pornography and sexually explicit story were, on this ground, inadmissible to prove appellant's intent.[4]

Furthermore, where a defendant's intent is genuinely uncontested, any nominal probative value will be easily outweighed by the danger of prejudice.  See Reynolds, 24 Va. App. at 225, 481 S.E.2d at 481-82 (citing Foster, 5 Va. App. at 323-24, 362 S.E.2d at 748-49); Tucker, 17 Va. App. at 523-24, 438 S.E.2d at 494; see also United States v. Beechum, 582 F.2d 898, 914 (5th Cir. 1978) (en banc) ("If the defendant's intent is not contested, then the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice; therefore, in this circumstance the evidence is uniformly excluded."); State v. McGlew, 658 A.2d 1191, 1196 (N.H. 1995).

---

[4]This case does not involve the use of other bad acts evidence where the other acts are continuous and interwoven or part of a series of related crimes.  Cf. Wilkins v. Commonwealth, 18 Va. App. 293, 298-99, 443 S.E.2d 440, 443 (1994) (en banc).  Similarly, this case does not involve circumstances in which intent may not be inferred from the unlawful act itself.  Cf. People v. Vargas, 666 N.E.2d 1357, 1358 (N.Y. 1996) (mem.); Johnson, 932 S.W.2d at 302.

Since the issue of intent was not genuinely in dispute in this case, the probative value of the child pornography evidence was clearly outweighed by its prejudicial effect; the tendency of the child pornography and sexually explicit story to divert the jury and inject extraneous considerations into the fact-finding process, as well as the inherently inflammatory character of the evidence, was clear. Given the nature of the sexually explicit materials, the risk was great that the jury might consider the unpunished possession of the materials in arriving at their verdict. See Tucker, 17 Va. App. at 524, 438 S.E.2d at 494. Indeed, as the trial court noted in its initial ruling excluding the videotape evidence, admission of the sexually explicit materials "runs the risk of turning an aggravated sexual battery trial into a child pornography trial."

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Bottoms, 22 Va. App. at 384, 470 S.E.2d at 156 (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). Because the issue of intent was not genuinely in dispute, we find the admission of the child pornography and story on the issue of appellant's intent to be an abuse of discretion.[5]

---

[5]We address this evidence only in the context in which it arose in the first trial. If, on retrial, appellant claimed accident or mistake, the evidence would be admissible, as the issue of intent would be genuinely in dispute.

14

We also agree with appellant that the videotape was improperly shown to the jury. The trial court, reversing its earlier ruling excluding the videotape on the ground its prejudicial effect outweighed any probative value it might have, allowed the prosecution to play the videotape to the jury to impeach appellant's denial of any knowledge of the pictures comprising the Commonwealth's child pornography exhibits and their presence on his computer. The Commonwealth's child pornography exhibits were part of the videotape compilation of pictures. The court reasoned that the jury should properly evaluate appellant's denial in light of the number of pictures found on appellant's computer, twenty-four of which were included in the videotape exhibit.

We find the admission of the videotape to be erroneous on the ground that a witness may not be cross-examined on a collateral subject.[6] If the witness answers a question on a collateral issue, the answer is conclusive and may not be contradicted with further evidence. Simpson v. Commonwealth, 13 Va. App. 604, 607, 414 S.E.2d 407, 409 (1992) (citing Seilheimer v. Melville, 224 Va. 323, 326, 295 S.E.2d 896, 898 (1982)).

---

[6]As the Commonwealth notes, appellant failed to object to the Commonwealth's question which became the predicate for the court's ruling on the admissibility of the videotape for impeachment purposes. This failure to object, however, does not bar appellant from appealing the introduction of the material used to impeach him on the collateral matter. Simpson v. Commonwealth, 13 Va. App. 604, 607-08, 414 S.E.2d 407, 409 (1992).

15

"'The test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case.'" Williams v. Commonwealth, 16 Va. App. 928, 935, 434 S.E.2d 343, 347 (1993) (quoting Allen v. Commonwealth, 122 Va. 834, 842, 94 S.E. 783, 786 (1918)). Because we hold that the Commonwealth could not introduce the child pornography evidence in its case-in-chief, the videotape is impeachment evidence on a collateral matter and should not have been shown to the jury.[7]

### III.

### Admissibility of Hearsay Testimony

On direct examination, Starr testified that, in 1992, she told her husband she had been "sexually abused". Starr also testified that, in a subsequent conversation the same year, she told her husband that appellant "was the individual whom I had things to work out with." As appellant contends, Starr's statements given during her direct examination constituted hearsay and were erroneously admitted. See Haycox v. Dunn, 200 Va. 212, 227, 104 S.E.2d 800, 809-10 (1958); 2 Charles E. Friend, The Law of Evidence in Virginia § 18-4 (4th ed. 1993).

However, we reject appellant's contention that the testimony of Starr's husband regarding Starr's report to him about the assault and the identity of the perpetrator was erroneously

---

[7] In light of our reversal and remand of this case on the issue of reputation evidence, we will not undertake harmless error analysis of other errors.

16

admitted hearsay. Lance Curtis Starr, Starr's husband, testified over appellant's objection that, on one occasion in 1992, Starr told him she had been molested. He also testified that his wife, on a separate occasion, identified appellant as the person who had assaulted her. The testimony of Starr's husband was properly admitted. His testimony was elicited after appellant cross-examined Starr and attacked her testimony as a story of recent fabrication, impelled by her desire to become involved in the appellant's Internet pornography case.

In Faison v. Hudson, 243 Va. 397, 404-05, 417 S.E.2d 305, 309 (1992) (quoting Honaker Lumber Co. v. Kiser, 134 Va. 50, 60, 113 S.E. 718, 721 (1922)):

> "Where a witness has been assailed on the ground that [her] story is a recent fabrication, or that [she] has some motive to testifying falsely, proof that [she] gave a similar account of the transaction when the motive did not exist, before the effect of such an account could be foreseen or motives of interest would have induced a different statement, is admissible."

Appellant first suggested in his opening statement that Starr had fabricated the charge "in order to get involved in [the publicity of the Internet] case" and because she was "infatuated" with appellant. Subsequently, during cross-examination, Starr was questioned about her motives to fabricate the charge. Accordingly, we find that the trial court did not abuse its discretion in admitting the statements made by Starr's husband.[8]

---

[8]Appellant contended both at trial and on appeal that

17

IV.

Admissibility of Statements Obtained in Violation of <u>Miranda</u>

Appellant contends the trial court erred in permitting the Commonwealth to cross-examine him with respect to certain statements he made before being informed of his rights as required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Appellant made a statement when he was taken before the magistrate after his arrest on the pornography charges. According to an officer present at the time, in response to the magistrate's question,

"what [is] this . . . all about?", appellant answered:

> he liked young-looking girls and he liked pictures of them and he also said that he gets pictures of young-looking girls over his computer and he looks at some of them and he reroutes others.

This statement was suppressed prior to trial. However, the court limited the ruling to the Commonwealth's case-in-chief,

---

Starr's statements and those of her husband were not "recent" and were therefore erroneously admitted in violation of Code § 19.2-268.2. Code § 19.2-268.2 provides:

> Notwithstanding any other provision of law, in any prosecution for criminal sexual assault under Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2, a violation of §§ 18.2-361, 18.2-366, 18.2-370, or 18.2-370.1, the fact that the person injured made complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness.

Because we resolve the evidentiary question on other grounds, we do not reach the contention that admitting the statements violated the statute.

stating, "I might consider it different as a cross-examination or impeachment issue."

The Commonwealth contends the substance of the statement was never made the subject of the cross-examination.[9] Assuming without deciding the statement's substance is implicated by the question posed, we find appellant's argument is lacking merit. See Harris v. New York, 401 U.S. 222, 226 (1971) (holding that a statement obtained from a defendant in violation of Miranda can be used by the government in cross-examination or rebuttal to impeach the defendant's credibility if he or she chooses to testify). Appellant's further contention that such statements are permitted during cross-examination only when a defendant has made "sweeping denials of the matter contained in the suppressed statements on direct examination" is likewise without merit. See Harris, 401 U.S. at 223 (allowing use of suppressed statements to impeach a defendant whose trial testimony "partially contradicted" his prior statements); Jones v. Commonwealth, 228 Va. 427, 441, 323 S.E.2d 554, 561 (1984) (explaining that the Commonwealth may impeach a defendant's inconsistent testimony with suppressed statements).

Appellant's challenge to a statement he made to Detective Smith,[10] made before Miranda warnings were given, is likewise

---

[9]When appellant denied any knowledge of the pornographic materials on his computer, the Commonwealth's attorney asked, "Well, you have admitted that you like to look at pictures of young girls, isn't that correct?" Appellant answered, "No, sir."

[10]During her cross-examination of the appellant, the

19

without merit as it was also properly the subject of cross-examination.[11]

## V.

### Jury Instructions

Appellant cites as error the court's refusal to give five of his instructions and the court's acceptance of one of the Commonwealth's instructions.[12] Defense instructions L, M, and E would have advised the jury that to convict the appellant on the charge, the Commonwealth had to prove beyond a reasonable doubt the victim was under the age of thirteen when assaulted. The jury was, in fact, duly instructed as to the age requirement.[13]

---

prosecutor asked him if he recalled "a detective who said to you that he was looking for child pornography." The appellant answered, "No, ma'am." She then impeached appellant with the answer appellant gave to Detective Smith, to the effect that he would "find things on the computer, but they are just fantasy."

[11]Appellant also contends he was wrongfully denied a hearing on whether the statement to Detective Smith should be suppressed on the ground it was made before he received Miranda warnings, citing Stockton v. Commonwealth, 227 Va. 124, 314 S.E.2d 371 (1986), habeas corpus granted, 852 F.2d 740 (4th Cir. 1988). However, the failure to give appellant his Miranda warnings was never in dispute; the point was conceded by the prosecutor and accepted as established by the court, obviating the need for a hearing on the matter.

[12]Appellant contends the trial judge erred in granting one of the Commonwealth's instructions on the ground it "singled out for special emphasis a part of the evidence tending to establish a particular fact." This instruction addressed the child pornography evidence. In light of our decision regarding the propriety of admitting the videotape evidence, we do not address this question.

[13]The court instructed the jury that, "The Commonwealth must prove beyond a reasonable doubt . . . that Jana Starr . . . was less than 13 years of age."

20

Accordingly, the trial court did not err in refusing the proffered defense instructions. See Cardwell v. Commonwealth, 248 Va. 501, 514, 450 S.E.2d 146, 154 (1994) (explaining that a court is not obligated to grant duplicative instructions).

Defense instruction D sought to define reasonable doubt to the jury. Appellant concedes, however, that this Court, as well as the Supreme Court of Virginia, has consistently "discouraged trial courts from attempting to define reasonable doubt to the jury." See, e.g., Strawderman v. Commonwealth, 200 Va. 855, 858, 108 S.E.2d 376, 379 (1989); Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986) (quoting Strawderman, 200 Va. at 858, 108 S.E.2d at 379). The trial court did not err in rejecting the proffered instruction.

Appellant tendered three instructions addressing the alibi defense. The court granted one of the three proffered instructions.[14] On appeal, appellant contends the court erred in failing to instruct the jury that he did not bear the burden to prove his alibi.[15] Contrary to appellant's contention, the court

---

[14]The alibi instruction as given reads:

> The defendant relies upon the alibi, the defense of alibi, namely, that he was not present at the time and place the alleged offense was committed. If after consideration of all the evidence you have a reasonable doubt that the defendant was present at the time and place of [sic] the alleged offense was committed, you shall find him not guilty.

[15]The proffered defense instruction reads:

fully instructed the jury on the defense of alibi, and informed the jury that the Commonwealth bore the burden of proof beyond a reasonable doubt. In addition, the court specifically instructed the jury that appellant bore no burden to produce any evidence. Read as a whole, the instructions clearly conveyed to the jury each principle of law offered by appellant. See Rollston v. Commonwealth, 11 Va. App. 535, 541, 399 S.E.2d 823, 826 (1991) (explaining that jury instructions must be read as a whole). Because the defense instruction was cumulative, it was neither necessary nor required. Cardwell, 248 Va. at 514, 450 S.E.2d at 154; see also Crabbe v. Commonwealth, 221 Va. 419, 421, 270 S.E.2d 727, 728 (1980) (per curiam) (holding that an alibi instruction is unnecessary where the court instructs the jury on the elements of a crime and the burden of proof).

The appellant's conviction is reversed and remanded for a new trial, if the Commonwealth be so advised.

Reversed and remanded.

---

The jury is instructed that the burden of proving alibi rests on the defendant. However, the jury is instructed that the defendant need not prove the alibi beyond a reasonable doubt, or even by a preponderance of the evidence. The defendant must only introduce evidence, which, considered with the whole evidence, creates a reasonable doubt of his guilt.