COURT OF APPEALS OF VIRGINIA

Present:  Judges Bray, Clements and Senior Judge Hodges
Argued at Chesapeake, Virginia


BILLY JOE WALKER

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2455-99-1      JUDGE JEAN HARRISON CLEMENTS
                                       OCTOBER 31, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                       Wilford Taylor, Jr., Judge

            Richard S. Yarow (Richard S. Yarow, Ltd., on
            brief), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Billy Joe Walker was convicted in a jury trial of second

degree murder and use of a firearm in the commission of a murder.

On appeal, he contends the trial court erred (1) in allowing

witness testimony concerning his prior bad acts to be introduced

to the jury and (2) in refusing to instruct the jury on the

elements of voluntary manslaughter.  We disagree and affirm the

convictions.

     As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

---

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

value, this opinion recites only those facts necessary to a disposition of this appeal.

## A. PRIOR BAD ACTS TESTIMONY

Walker asserts that the evidence introduced at trial that he had previously assaulted his father and brandished a gun at him was inadmissible. While conceding that such testimony might fall under the exception allowing the introduction of evidence of an accused's prior bad acts to negate the possibility of accident, appellant argues that the instant evidence was too remote and not probative of whether the shooting was an accident. We disagree.

The trial court ruled admissible evidence presented by the Commonwealth of two prior incidents involving Walker and his father, both of which were witnessed by neighbors. The first incident took place one year prior to the homicide. After an exchange of words between Walker and his father in the front yard, Walker kicked his father in the chest, breaking three of his ribs. The second incident occurred approximately one month prior to the shooting. After yelling from the front porch at his parents who were standing near the street, Walker went into the house, came out with a gun, and, while walking back and forth on the porch, asked them repeatedly, "Is this what you want?"

Generally, evidence of other crimes or bad acts is inadmissible to prove the accused is guilty of the crime charged. See Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998). Such evidence is inadmissible because "it may confuse the

issues being tried and cause undue prejudice to the defendant."
Id.  "However, 'where the motive, intent, or knowledge of the
accused is at issue, evidence of other offenses is admissible if
it shows the conduct or attitude of the accused toward his victim,
establishes the relationship between the parties, or negates the
possibility of accident or mistake.'"  Blaylock v. Commonwealth,
26 Va. App. 579, 588-89, 496 S.E.2d 97, 101-02 (1998) (quoting
Moore v. Commonwealth, 222 Va. 72, 76, 278 S.E.2d 822, 824
(1981)).  Nonetheless, evidence of prior bad acts will not be
admitted if its prejudicial impact outweighs its probative value,
a determination which is within the trial court's discretion and
one that will not be overturned absent an abuse of discretion.
See Robbins v. Commonwealth, 31 Va. App. 218, 222-23, 522 S.E.2d
394, 396 (1999).

In this case, Walker's intent at the time of the shooting was
clearly in dispute.  It was, in fact, the most important issue in
controversy before the jury.  Appellant's theory of the case was
that the shooting was unintentional, an accident.  Consequently,
the Commonwealth had the burden to prove that the shooting was not
accidental.  The evidence of prior bad acts was therefore relevant
to show that Walker deliberately shot his father.  To that end,
the evidence demonstrated Walker's ill feelings and hostility
toward his father and established that their relationship was a
violent one marked by assaults and threats by Walker against his
father.  Thus, the fact that Walker had previously assaulted his

father and brandished a weapon at him served to negate the argument that the shooting was an accident.  We find, therefore, that the evidence of Walker's prior conduct was probative as to the issue of Walker's intent at the time of the shooting and that the trial court did not abuse its discretion in deciding that the probative value of that evidence outweighed its prejudicial impact.[1]

As to Walker's argument that the challenged evidence was too remote in time from the crime charged and should not have been admitted, our review of the record convinces us that this contention is without merit.  "[T]he trial court may consider remoteness as one of the factors in determining evidentiary relevance of prior bad acts evidence, but it should not withhold such evidence solely on the basis of remoteness unless the expanse of time has truly obliterated all probative value."  Lafon v. Commonwealth, 17 Va. App. 411, 419, 438 S.E.2d 279, 284 (1993). "This determination is committed to the sound discretion of the trial court."  Id.

Here, as the trial judge pointed out, the challenged evidence involved not strangers but family members whose relationship was

_____

[1] We note as an aside that any prejudice inherent in the testimony concerning Walker's prior bad acts was diminished and minimized by the trial court's instruction that the jury was to consider such testimony "only as evidence of the defendant's intent and as evidence of the absence of mistake or accident on the part of the defendant in connection with the offense for which he is on trial and for no other purpose."

ongoing.  Given that familial relationship, neither expanse of time, one year or one month, respectively, was so long as to obliterate its relevance to the issue of whether the shooting was an accident.  We find, therefore, that the trial court did not abuse its discretion in refusing to preclude the challenged testimony on the basis of remoteness.

Hence, the trial court's ruling admitting the evidence that Walker had previously assaulted his father and brandished a gun at him will not be overturned.

### B.  VOLUNTARY MANSLAUGHTER INSTRUCTION

Walker further asserts on appeal that the trial court erred in denying his request for a jury instruction on voluntary manslaughter.[2]  He maintains that the evidence adduced at trial supported such an instruction and that the jury should have therefore been given the opportunity to consider whether he killed his father in the heat of passion.

It is well settled that "jury instructions are proper only if supported by the evidence, and that more than a scintilla of evidence is necessary to support a lesser-included offense instruction requested by the defendant."  Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998).  "To reduce a

---

[2] Although appellant asked for instructions on both voluntary and involuntary manslaughter at trial, he addressed solely the issue of voluntary manslaughter on brief and in oral argument.  We will thusly limit our consideration to the issue of voluntary manslaughter.  See Quintana v. Commonwealth, 224 Va. 127, 134 n.1, 295 S.E.2d 643, 645 n.1 (1982).

homicide from murder to voluntary manslaughter, the killing must have been committed in the heat of passion and upon reasonable provocation." Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986). Thus, to grant Walker's requested instruction on the lesser offense of voluntary manslaughter, the record, viewed in the light most favorable to the accused's theory of the case, see Lea v. Commonwealth, 16 Va. App. 300, 305, 429 S.E.2d 477, 480 (1993), must contain more than a scintilla of evidence that appellant killed his father in the heat of passion and upon reasonable provocation. "Heat of passion is determined by the nature and degree of the provocation and may be founded upon rage, fear, or a combination of both." Barrett, 231 Va. at 106, 341 S.E.2d at 192 (citation omitted).

Having elected not to testify at trial, Walker relies solely on the testimony of his mother, Mrs. Walker, to show that the killing may have been manslaughter. Specifically, he contends that Mrs. Walker's testimony that appellant and his father were engaged in an argument that led to a physical altercation, that her husband was so enraged during the confrontation that she was unable to stop the fight, and that appellant appeared to be upset when his father was hitting him was sufficient to support a voluntary manslaughter instruction. We do not agree.

None of the evidence cited by Walker supports a finding that Walker was upset at the time of the killing or that the killing occurred upon reasonable provocation. Walker and his father did

indeed engage in a heated and violent physical altercation during which Walker's father hit him with a metal stepladder and Walker hit his father with a piano leg. That altercation, however, had ended, according to Mrs. Walker's testimony, by the time Walker retrieved the gun from another room. When Walker came back into the living room with the gun, Walker's father had dropped the ladder and walked to the couch on the other side of the room. Just before the shooting, Walker's father, who was standing by the couch with nothing in his hands, the confrontation over, said to Walker, "I love you. Put the gun down."

Furthermore, the evidence that Walker's father was enraged during the fight is immaterial to a determination of Walker's state of mind at the time of the shooting. Similarly, the fact that Walker was upset when his father was hitting him with the ladder does not indicate that he was upset at the time of the shooting. When asked if Walker appeared to be upset by the fight with his father, Mrs. Walker responded, "No. He didn't seem to be upset." When asked how long Walker was out of the living room getting the gun, Mrs. Walker stated that she did not know.[3]

---

[3] In setting forth the facts of this case, appellant contends that Mrs. Walker's testimony regarding the period of time between when Walker left the living room after the fight and returned with the gun indicates that he was gone for just a short time. Our reading of Mrs. Walker's testimony leads us to a different understanding. When asked how long Walker was gone before reappearing with the gun, Mrs. Walker stated, "I don't know. I can't recall." When asked if it could have been ten minutes, five minutes, she said, "It might have been a second, I mean, I don't know. I can't—" Even viewed in the light most

According to each of the various versions of the events of that night that Walker provided to the police, including his written statement, Walker went to his room after the fight and changed his clothes.  He was in his room for ten minutes before returning to the living room.  Plainly, the evidence does not show that Walker was enraged, afraid, upset or otherwise in the heat of passion when he shot his father.

Neither does the evidence show that the provocation claimed by Walker was reasonable.  Walker indicated in his statement to the police that he got the gun because his father would not let him leave the house.  The deceased, however, was a 72-year-old man who weighed only 130 pounds, was suffering from Parkinson's Disease, and was unarmed at the time.  Appellant, on the other hand, was 18 years of age, 170 pounds in weight, and apparently healthy.  It is not reasonable that Walker would need to use deadly force to protect himself from his father in leaving the

_____

favorable to appellant, this testimony, while allowing for the possibility that Walker might have been gone for a short time, is not evidence that he was out of the room for only a short time. It also allows for the possibility that Walker was out of the living room for a lengthier period of time.  Mrs. Walker did not know.  At most, it is not more than a mere scintilla of evidence supporting the submission of the requested instruction to the jury.  See Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1993) (holding that "the weight of the credible evidence that will amount to more than a mere scintilla of evidence is a matter to be resolved on a case-by-case basis" by assessing the evidence in support of a proposition against the "other credible evidence that negates" it).

house.  Thus, we find no evidence in the record that Walker killed his father upon reasonable provocation.

We hold, therefore, that the trial court properly refused appellant's instruction for voluntary manslaughter because it was not supported by more than a scintilla of evidence.

Accordingly, we affirm appellant's convictions.

<u>Affirmed.</u>