COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
          Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements
          and Agee
Argued at Richmond, Virginia


WALTER L. KELLER, JR.
                                      MEMORANDUM OPINION[*] BY
v.    Record No. 1591-99-2             JUDGE LARRY G. ELDER
                                         FEBRUARY 20, 2001
COMMONWEALTH OF VIRGINIA


                    UPON A REHEARING EN BANC

          FROM THE CIRCUIT COURT OF CHARLOTTE COUNTY
                Charles L. McCormick, III, Judge

        Steven D. Benjamin (Betty Layne DesPortes;
        Benjamin & DesPortes, P.C., on briefs), for
        appellant.

        Linwood T. Wells, Jr., Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


     On appeal from his convictions of attempted sodomy, in

violation of Code §§ 18.2-26 and 18.2-67.1, and sodomy with a

child under the age of thirteen years, in violation of Code

§ 18.2-67.1, Walter L. Keller, Jr., contends that the trial

court erred (1) in allowing the Commonwealth to introduce into

evidence certain items of sexual paraphernalia, and (2) in

denying the defendant's request for a mistrial.  Because we hold

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

that five of the six items in question have no legal relevance, we reverse the convictions.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

S.A. worked for Keller and often brought his twelve-year-old cousin, C.B., to help. The work generally entailed yard work and some light house work, such as carrying groceries. After completing the work, the boys would go into Keller's basement to be paid and to converse with Keller.

On September 22, 1998, Keller took the boys into the basement. He showed C.B. a pornographic video depicting boys, girls, and adults "doing sexual things." Keller then removed a fake vagina out of a file cabinet. He told C.B. he "wanted [him] to like use a fake vagina." When C.B. walked toward the file cabinet, Keller pushed him away. Keller took C.B. into the bathroom where he performed fellatio on C.B. He then asked C.B. to perform fellatio on him, but C.B. refused. Keller then unlocked the bathroom door and both he and C.B. exited.

The next day, Keller asked S.A., who was fifteen years old, to come into the basement. He began touching S.A. and asking for sexual favors, but S.A. shoved him away and left the basement.

When Deputy Lacks questioned Keller about the sexual paraphernalia he had used in the C.B. incident, Keller took Lacks to his home, where he showed Lacks a collection of "sex toys." Four items simulating male and female genitalia and two "stimulation devices" were seized by Deputy Lacks and were introduced at trial, over defense objection.

At the close of all the evidence, the court's first instruction to the jury was as follows: "The possession of sex toys is not a crime and is not an element of the charges against the defendant. Its purpose, if used at all, is to corroborate other evidence in the case."

The jury convicted Keller of committing sodomy on a child under thirteen years of age, in violation of Code § 18.2-67.1, and attempted sodomy, in violation of Code §§ 18.2-26 and 18.2-67.1.

Keller contends that the trial court erred in allowing the Commonwealth to introduce into evidence the sexual paraphernalia seized from his home. He argues that possession of such items is not illegal and that their admission into evidence was not probative of any issue on trial, but was merely prejudicial. In his motion in limine, Keller argued that he would testify that the events described by the boys never took place, and, therefore, that his intent would not be at issue at trial. The Commonwealth argued that the admission of the paraphernalia

would corroborate the boys' testimony and would prove Keller's intent.

We hold the admission of five of the six "sex toys" into evidence was reversible error both because these items were not relevant to the offenses for which Walter L. Keller, Jr. was on trial and, alternatively, because any probative value they might have had was outweighed by the prejudicial effect of their admission. Because these items were both irrelevant and prejudicial, we would hold that the court's cautionary instruction compounded rather than cured the error resulting from their admission, rendering the trial court's denial of Keller's mistrial motion reversible error.

At trial, Deputy Lacks held up the items for the jury to see, describing them as follows:

> [T]he first one is . . . what was referred to as a fake vagina. . . . The second one is another fake vagina type. [The third one] is going to be some type of a penis looking object that's attached to a battery operated mechanism. The next is some type of penis looking object. And the next one is . . . some type of stimulation machine . . . [,] a battery controlled operated device . . . [t]hat's connected to [a] . . . large clear tube or a jar object with an opening at the end . . . . The last one is . . . five red balls on a string that's attached to a ring at the end.

When victims C.B. and S.A. testified, they reported that appellant showed C.B. a "fake vagina," and C.B. identified Commonwealth's exhibit 4 as the item they saw. C.B. and S.A.

also testified that they had never seen Commonwealth's exhibit 5, 6, 7, 8 or 9.  Keller also testified about the "fake vagina," contending C.B. broke into his house and found the item in his filing cabinet, but Keller offered no testimony about any other sex toys in his possession.  Although no other evidence linked these exhibits to the offenses for which Keller was on trial, the prosecution repeatedly drew attention to them by asking Keller's witnesses to look at the exhibits and indicate whether they were "surprised" by Keller's possession of the sex toys.

Evidence ordinarily is admissible if it "is both material--tending to prove a matter that is properly at issue in the case--and relevant--tending to establish the proposition for which it is offered."  Johnson v. Commonwealth, 2 Va. App. 598, 601, 347 S.E.2d 163, 165 (1986).  However, evidence of crimes or other bad acts committed by the accused usually is incompetent and inadmissible to prove the accused committed or likely committed the particular crime charged.  See Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).  This rule "is deeply rooted in Virginia common law," Tucker v. Commonwealth, 17 Va. App. 520, 522, 438 S.E.2d 492, 493 (1993), and exists to prevent "confusion of offenses . . . and a suggestion of 'criminal propensity,' thus preserving the 'presumption of innocence,'" Crump v. Commonwealth, 13 Va. App. 286, 289, 411 S.E.2d 238, 240 (1991) (citations omitted).  These principles apply not only to other crimes but to any

"independent acts" likely to confuse the jury.  Id.  Such evidence of other acts may be admissible under limited circumstances if (1) it is offered to prove "motive, intent, plan, or scheme, or any other relevant element of the offense on trial," Scott v. Commonwealth, 228 Va. 519, 527, 323 S.E.2d 572, 577 (1984), and (2) its relevance outweighs any prejudicial effect, see Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993).

We hold that the "sex toys" other than Commonwealth's exhibit 4, which was shown to one of the boys, were inadmissible because they were neither relevant nor material to the offenses for which Keller was on trial.  Although they had been in Keller's possession, no evidence established that he showed these other items to the boys or that they were involved in the charged offenses in any way.  Their introduction tended to indicate only what might be viewed as a deviant sexual propensity and was likely to confuse the jury and to reverse the presumption of innocence.  Further, "the tendency of the . . . sexually explicit [materials] to divert the jury and inject extraneous considerations into the fact-finding process, as well as the inherently inflammatory character of the evidence, was clear."  Blaylock v. Commonwealth, 26 Va. App. 579, 592, 496 S.E.2d 97, 103-04 (1998).

We also hold that the trial court compounded this prejudice by the manner in which it instructed the jury.  The court's

- 6 -

instruction to the jury that it could consider Keller's possession of the "sex toys" "to corroborate other evidence in the case" permitted the jury to find that his possession of these items made it more likely that the events about which the boys testified actually had occurred.  This instruction erroneously permitted the jury to consider overly-prejudicial evidence and did not cure the error resulting from the court's admission of this evidence.

For these reasons, we reverse Keller's convictions and remand for a new trial consistent with this opinion if the Commonwealth be so advised.

<u>Reversed and</u>
<u>remanded</u>.

Willis, J., with whom Fitzpatrick, C.J., and Bumgardner, J., join, dissenting.

> [N]on-constitutional error is harmless "[w]hen it <u>plainly appears</u> from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678 (emphasis added). "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, under Code § 8.01-678, a criminal conviction must be reversed unless "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (<u>en</u> <u>banc</u>). I reach that conclusion.

As the majority acknowledges, the "fake vagina" was properly admitted as Commonwealth's exhibit 4 because it corroborated the boys' testimony. Although the other "sex toys" were not probative of any element of the crimes on trial and although they did not specifically corroborate the boys' testimony, their admission into evidence was merely cumulative of Commonwealth's exhibit 4 and could not affect the verdicts.

Admission of the other "sex toys" into evidence could not enhance the probative value of Commonwealth's exhibit 4. Exhibit 4 was a device of unquestionable character. It was described by Deputy Lacks. The presence of the other five "sex toys" in evidence could in no way enhance the probative value of

- 8 -

exhibit 4 as to its own nature or as corroboration of the boys' testimony.

Exhibit 4 and its display by Keller to the boys reflected permissibly on Keller's character to a degree that was not susceptible of augmentation.  The prejudice to Keller by this exhibit and the description of its display flowed from facts of the case and was proper.  Admission of the other "sex toys" into evidence was merely cumulative in this regard and effected no significant further aspersion on Keller's character.

For the foregoing reasons, I would hold that admission of Commonwealth's exhibits 5 through 9 was harmless error and would affirm the judgment of the trial court.