COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Bray and Annunziata
Argued at Alexandria, Virginia


MICHAEL JOSEPH STATON

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1362-01-4        JUDGE JERE M. H. WILLIS, JR.
                                         AUGUST 6, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                  Ann Hunter Simpson, Judge

          Cary S. Greenberg (Edward S. Rosenthal; A.
          Lewis Lowery, Jr.; Rich Greenberg Rosenthal &
          Costle, LLP; Rinehart, Lowery, Strentz &
          Butler, P.L.C., on briefs), for appellant.

          Paul C. Galanides, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     Michael Staton was convicted in a jury trial of (1) two

counts of taking indecent liberties with a child, in violation of

Code § 18.2-370.1; (2) two counts of aggravated sexual battery, in

violation of Code § 18.2-67.3; and (3) object sexual penetration,

in violation of Code § 18.2-67.2.  On appeal, he contends that the

trial court erred in admitting into evidence references to child

pornography found on the Staton family computer.  For the

following reasons, we reverse the judgment of the trial court and

remand for further proceedings, if the Commonwealth be so advised.

———————————————
     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.  BACKGROUND

### A.  OFFENSES

Staton and his family lived behind A.M.'s residence.  A.M. and her family were frequent visitors in the Staton home.  A.M. was friendly with Staton's children and would often swim in the Statons' pool, play Nintendo with them, and use their computer.  During the summer of 1996, when A.M. was twelve years old, Staton began teaching her how to use the computer and allowed her to access America Online ("AOL") on the Staton computer, using her own screen name.

A.M. testified that one afternoon in early June 1996, she received permission from Mrs. Staton to use the Statons' computer.  She went down to the basement where the computer was located.  As she entered the computer room, she saw Staton looking at his e-mail and saw, on the computer, an image of a naked woman.  She turned away and waited five to ten minutes. Staton then signed A.M. on to AOL and left the basement.

A.M. testified that approximately twenty minutes later, Staton returned and sat next to her.  He began stroking her hair and complimenting her.  He then put his arm around the side of the chair, reached his hand beneath her T-shirt, and began to fondle her breast.  She testified that she froze, but then pushed his arm away.  She then got up and left the basement. She testified that as she left, Staton told her that he would hurt her family and kill her mother if she told anyone what he

-

had done.  She told no one about the incident and thereafter avoided going to the Staton home except with her parents.

A.M. testified that a few weeks later, Staton's son invited her to come over and use the computer.  She went.  Staton signed her on to AOL and left her in the basement.  Approximately thirty minutes later, he returned, closed the door, and sat down next to her.  He pulled her chair back from the computer, reached around her, and unbuckled and unzipped her shorts.  He then placed his hand inside her underwear, rubbed her "on her vagina" for several seconds, and then inserted his fingers "into her."  At that point, Staton's son knocked on the door.  A.M. dressed and fled home.  When she arrived home, her mother asked why she was crying.  She said that she and Staton's son had a fight.  She did not tell her mother what had really happened.

In late 1998, A.M. reported the above events to her mother. On March 12, 1999, the police had A.M. telephone Staton.  They instructed her to tell him that she had confided to a friend that she had been sexually abused, that the friend had told a counselor, and that she expected to be asked whether anybody had ever touched her anywhere on her body.  The police told her to ask Staton how she should respond.  A.M. did as instructed. After a long pause, Staton told her to say that she had fabricated the story to comfort her friend.  Stafford Police Detective George Bond recorded the conversation.

-

Later that evening, the police executed a search warrant upon Staton's home.  They seized, among other things, Staton's computer and forty-seven computer diskettes.

During the search, Bond questioned Staton.  Asked by Bond when he had last spoken to A.M., Staton did not disclose his conversation with her earlier that day.  When asked specifically about the call earlier that day, he stated falsely that A.M. had told him that a counselor wanted to know whether she had viewed pornography on his computer.  Bond then asked whether his computer contained pornography.  Staton replied that there would be some adult pornography, but that there "shouldn't be any" child pornography.  He stated that in the past he had received unwelcome e-mails with child pornography attached, but had deleted it all and had sent messages to the senders to cease sending such material.

When asked by Bond whether he had touched A.M., Staton denied molesting her.  He admitted touching her hair.  He stated that she might have mistaken, as intentional, occasions when he accidentally touched her breasts while moving the computer keys or while leaning over her to help her at the computer.  He acknowledged that he might have touched her accidentally while in the swimming pool or while practicing cheerleading moves, but insisted those were the only times he might have touched her groin area.

-

When asked by Bond whether he might have touched A.M. while seated at the computer, but not recalled doing so because he was intoxicated, Staton said he did not think so, but then admitted, "It's possible, but I hope not . . . . It could be possible." He repeated throughout his interview with Bond that the alleged incidents of sexual abuse did not occur.

A Virginia State Police forensic computer expert, Andrew Clark, examined Staton's computer and diskettes and found sixty-four images that he characterized as child pornography.

Staton testified. He denied that he had touched A.M. in the manner described by her or in any improper away. He denied that he had lied to Detective Bond concerning the presence of child pornography in his computer.

## B. PROCEDURAL HISTORY AND TRIAL

Staton moved pretrial to prevent the Commonwealth from using at trial evidence of the child pornography found on his computer. Until the morning of trial, the trial court denied those motions, accepting the Commonwealth's theory that the child pornography evidence was relevant to Staton's motive, intent, and credibility and that its probative value was not outweighed by its prejudicial effect. As a result, the Commonwealth's attorney was able in his opening statement to describe the images of both adult and child pornography found on the Staton family computer as evidence of Staton's intent and motives in connection with the charges on trial.

-

During the course of the trial, the trial court, being made aware that the child pornography had not existed on Staton's computer at the time of the alleged offenses, reversed itself and refused to allow the Commonwealth to introduce the images into evidence. However, over Staton's repeated objections, it permitted the Commonwealth to present Clark's testimony that he had recovered sixty-four images of child pornography from Staton's computer and diskettes. Clark testified that some of the files were stored in an AOL download directory. He testified that this required a user to manipulate the keys or a mouse and that the computer would not have acquired the material automatically. On cross-examination, Clark acknowledged that all sixty-four images had creation dates subsequent to the summer of 1996.

Staton's motion for a mistrial based upon the prejudicial effect of the evidence of child pornography was denied. Over Staton's objection, the trial court instructed the jury that it could consider evidence of other crimes or bad acts as evidence of, among other things, motive, intent, the "defendant's conduct and feelings toward the victim," and "the defendant's credibility." It refused to instruct the jury that it should not consider the evidence of such bad acts or other crimes as evidence that the defendant committed the crimes on trial.

-

## II.  ANALYSIS

Staton contends that the trial court erred in admitting evidence that described as child pornography images found on his computer.  He argues the prejudicial effect of such evidence outweighs any probative value.  We agree.

As a general rule, evidence that

> shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. It is also well established that evidence of other offenses should be excluded if offered merely for the purpose of showing that the accused was likely to commit the crime charged in the indictment.

Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).  This general rule is subject to certain exceptions. Evidence of prior bad acts may properly be admitted:

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a modus operandi; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute part of a general scheme of which the crime charged is a part.

-

<u>Quinones v. Commonwealth</u>, 35 Va. App. 634, 640, 547 S.E.2d 524, 527 (2001).  "With respect to these exceptions, the test is whether 'the legitimate probative value outweighs the incidental prejudice to the accused.'"  <u>Id.</u>

The Commonwealth argues that the existence of child pornography on Staton's computer and his false statement to Bond concerning it are probative of his mental state, his intent to commit the crimes on trial, and his attitude toward A.M.  We find these arguments unpersuasive.

This case involves no genuine issue of intent.  It turns solely on whether the acts alleged actually occurred.  Staton has never suggested that he committed the alleged acts innocently, accidentally, or without lascivious intent.  He has steadfastly maintained that the acts never occurred.  Moreover, the acts alleged themselves bespeak lascivious intent.  Consequently, his intent was not an issue on trial and the evidence of child pornography was, in this regard, irrelevant.  Because the issue on trial was whether the acts were committed, rather than Staton's intent in committing the acts, the intent exception does not support introduction of evidence of other crimes.  <u>See</u> <u>Blaylock v. Commonwealth</u>, 26 Va. App. 579, 592, 496 S.E.2d 97, 103 (1988).

No evidence suggested a relationship between the child pornography and the charges against Staton.  The images found on his computer were created well subsequent to his alleged

-

molestation of A.M.  The presence of the material on Staton's computer did not prove a motive to commit the acts alleged.  The events charged were completed prior to his possession of the child pornography.

No evidence disclosed that the images were ever shown to A.M. or that she was aware of their existence.  She was aware of one image only, that of a naked woman, of which she could provide no further detail.  No evidence suggests that Staton intended her to see this.

The images of child pornography displayed no acts involving A.M. or acts similar to those allegedly committed against her.  No evidence suggests that the images played any part in the events described by A.M. or that they influenced in any way Staton's attitude and conduct toward her.

Staton's possession of child pornography proved no more than a predisposition for obscenity and a salacious interest in children at the time of possession.  It was probative of no relevant component of the charges on trial.  See Kirkpatrick, 211 Va. 269, 176 S.E.2d 802.

Because his possession of child pornography was collateral and irrelevant to the issues on trial, the trial court should not have permitted the Commonwealth to explore that possession or his denial of possession on cross-examination, even under the auspices of impeachment.  "If [a] witness answers a question on a collateral issue, the answer is conclusive and may not be

-

contradicted with further evidence." Blaylock, 26 Va. App. at 593-94, 496 S.E.2d at 104. When Staton denied on cross-examination that he lied to Detective Bond about having child pornography on his computer, that answer was conclusive and further questioning on the issue should have ceased.

The issue in this case was not whether Staton is of bad character or whether he possesses a reprehensibly salacious interest in children. The issue is whether he committed the acts with which he was charged. The fact that he may be of bad character and may possess a salacious interest in children is not probative of whether he committed those acts. The one circumstance can well exist without the other. Trial of the issues in this case came down to an assessment of A.M.'s credibility and Staton's. Proof of his bad character and unsavory interests did not address his credibility but placed him in a highly prejudiced posture before the jury. It had the effect of converting the trial from an assessment of the charges against Staton to a general inquiry as to his character, thus denying him a fair trial on the issues.

The judgment of the trial court is reversed and remanded for further proceedings if the Commonwealth be so advised.

Reversed and remanded.

-