PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Hampton, Virginia

LENNY ROCK KENNER

v.      Record No. 0934-18-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
DECEMBER 3, 2019

FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
W. Revell Lewis, III, Judge

Afshin Farashahi (Afshin Farashahi, P.C., on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Lenny Rock Kenner ("Kenner") was convicted of animate object sexual penetration, in

violation of Code § 18.2-67.2, aggravated sexual battery, in violation of Code § 18.2-67.3, and

custodial sexual abuse, in violation of Code § 18.2-370.1. On appeal, he argues that the trial court

erred in: (1) allowing the introduction of child pornography evidence; (2) denying trial counsel's

motion to withdraw; and (3) denying Kenner's motion to have the jury individually polled.

I. BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial."

Williams v. Commonwealth, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting Jackson v.

Commonwealth, 267 Va. 666, 672 (2004)).

In November 2014, the victim, D.T., began living with her cousin, Angela Robinson, and

Kenner, Robinson's fiancé. D.T. was six years old at the time. D.T. returned to her mother's

home in October of 2015, after her seventh birthday. About six weeks after D.T. returned to live

with her mother, D.T. told her mother and a neighbor that, on several occasions, Kenner touched in and around her "private" while she lived with him. Specifically, Kenner made her sit on his lap on a red chair in his bedroom while he put his hand both on and inside D.T.'s vagina while he forced her to watch videos of naked adults engaging in different sex acts. Those videos were "on his computer. They came from Google." Kenner also told D.T. that when she grew up she would be his girlfriend.[1]

Dr. Alicia Meyer ("Dr. Meyer"), a licensed clinical psychologist, evaluated D.T. in September 2016 and testified at trial as an expert in the psychological assessment and treatment of childhood trauma. She diagnosed D.T. with post-traumatic stress disorder, which she explained can occur after an individual has endured a "big stressful event," including sexual violence. Dr. Meyer testified that D.T.'s symptoms were directly correlated with her allegation that Kenner sexually abused her. D.T. also told Dr. Meyer "something about a Taser, either witnessing or experiencing [Kenner] using a Taser."

Dr. Michelle Clayton ("Dr. Clayton"), a child-abuse pediatrician, conducted a physical examination of D.T., the result of which was consistent with D.T.'s allegations. Additionally, Dr. Clayton noticed "paired circular marks" on D.T.'s thighs that were consistent with injuries from a stun gun.

On November 25, 2015, police arrested Kenner. That same day, police executed a search warrant at Kenner's apartment and recovered a desktop computer from his bedroom, a laptop from the kitchen, and computer disks from his bedroom closet. A password-protected user account on the desktop contained an email account with Kenner's name, an autofill profile for Kenner with his phone number and address, a student loan document associated with Kenner,

---

[1] At trial, D.T. testified to these events via closed-circuit television. A video recording of a forensic interview with D.T. was also admitted into evidence, and portions of that video were played for the jury at trial.

and eBay and Facebook accounts in Kenner's name. The desktop computer also contained artifacts indicating that the computer was used to stream, download, or attempt to download numerous videos from "Ares," a peer-to-peer sharing software. The titles of those videos described sex with young children or teaching young children to have sex. On March 14, 2016, a grand jury indicted Kenner on one count of custodial sexual abuse, one count of aggravated sexual battery, and one count of animate object sexual penetration, stemming from the abuse between November of 2014 and October of 2015.

On October 21, 2016, the Commonwealth filed a motion *in limine* asking the court to allow it to introduce evidence of child pornography found on the computer. At a hearing on the motion, the Commonwealth argued that the titles of pornographic child videos found on the computer were "so much like the facts" of the instant offense that the evidence was "highly relevant and probative" of Kenner's "attitude towards his victim," as well as his intent, plan, motive, and absence of mistake. Counsel for Kenner argued that the video titles contained "a bunch of very prejudicial terms" that were "certainly more prejudicial than . . . probative" and did not "show a pattern or anything like that . . . of conduct that leads up to this." The circuit court granted the Commonwealth's motion, specifically allowing it to introduce "images or evidence of child pornography" from the computer "as well as evidence that the computer had been used to download or attempt to download certain files."

Before trial, Kenner's trial counsel moved for a continuance because he needed more time to prepare. The circuit court granted that motion and set the trial date for April 24, 2017. On April 12, 2017, Kenner's trial counsel moved to withdraw from the case. The circuit court held a pretrial hearing on that motion, where Kenner testified that he no longer had faith in trial counsel's ability to defend him because trial counsel had not yet subpoenaed thirty-five character witnesses or reviewed certain jail call recordings. However, Kenner had only made trial counsel

aware of the character witnesses a week before the hearing, despite being represented by the same trial counsel since the inception of the case.

Trial counsel further argued that he lacked the time and resources to adequately defend the case and that he may have two conflicts of interest. First, Robinson, one of Kenner's main witnesses, appeared to have turned against him, creating the possibility that trial counsel would have to testify at trial. However, trial counsel acknowledged that this was only a "potential conflict" that "hasn't arisen yet." Second, Kenner's sister filed a bar complaint against trial counsel. In a letter dated March 31, 2017, the Virginia State Bar informed trial counsel that it had received an inquiry concerning him. The letter directed trial counsel to communicate with Kenner regarding the status of his case and to copy the Bar on all communications with Kenner in order to "try to avoid [the Bar] initiating a formal ethics inquiry."

The circuit court, recognizing the motion to withdraw as essentially a motion to continue, denied the motion, but declined to "conclusively decide" whether the possibility that Robinson might become an adverse witness warranted a withdrawal in the future. However, on April 20, 2017, Kenner's trial counsel filed another motion to withdraw and a motion for a psychological evaluation. The circuit court granted the motion for a psychological evaluation to determine whether Kenner was competent to stand trial and continued the case until after the return of the evaluation.

Trial took place on June 12-13, 2017. Prior to *voir dire*, the circuit court asked Kenner if he was satisfied with his counsel. Although Kenner replied that he was not because the subpoenas "came out late," trial counsel did not renew his motion to withdraw. At trial, the Commonwealth called twelve witnesses, including D.T., Dr. Meyer, Dr. Clayton, and FBI Special Agent David Desy ("Agent Desy").

Agent Desy testified that the desktop found in Kenner's bedroom contained forty files of child pornography: thirty-eight images and two videos. Agent Desy described, generally, the content of those files for the jury. However, over the Commonwealth's objection, the circuit court refused to allow the photographs themselves to be presented to the jury. Similarly, the circuit court limited introduction of the video evidence. Despite its initial pretrial ruling that the videos themselves were admissible, the circuit court only allowed the Commonwealth to introduce the titles of the videos at trial. The titles included: "Fuck young naked nude little girl cum," "Toddler Fucked In Pussy," "10 yr fuck little girl," "Teaching sex to daughter," and "dad on daughter full penetration sex." The Commonwealth's evidence indicated that the files were downloaded, or attempted to be downloaded, between November 2014 and September 2015. Kenner did not request a limiting instruction with respect to this evidence, and one was not given.

At the conclusion of the Commonwealth's evidence, Kenner called eleven witnesses, including Robinson. However, Robinson's testimony did not prove adverse to Kenner and trial counsel did not renew his motion to withdraw based on her testimony.

The jury returned a verdict of guilty on all counts. The clerk read the verdict and asked the jury "so say you all . . . ?" to which all jurors appeared to respond affirmatively. The circuit court then explained to the jury that Virginia criminal trials are bifurcated, meaning the jury first determines guilt or innocence and then, if the jury finds the defendant guilty, further deliberations are required to determine a sentence. The jury was then excluded from the courtroom.

Outside the presence of the jury, the circuit court requested jury instructions from the parties. The jury returned to the courtroom, received instructions on determining a sentence, and heard arguments from the parties regarding sentencing. During his argument to the jury

regarding sentencing, for the first time, Kenner moved the circuit court to have the jury individually polled pursuant to Rule 3A:17 to ensure that the guilty verdict rendered in the guilt phase was unanimous. The circuit court denied that motion, and the jury retired to deliberate on sentencing. Kenner's trial counsel offered argument to support his motion. However, after detailing the posture of the trial by the time Kenner made the motion, the circuit court again denied the motion as untimely. The circuit court sentenced Kenner to life plus seven years, following the jury's recommendation. This appeal follows.

## II.  ANALYSIS

Kenner essentially argues on appeal that the circuit court erred in (1) admitting the evidence of child pornography found on his computer; (2) failing to permit his trial counsel to withdraw; and (3) in failing to permit a poll of the jury regarding their verdict.

### A.  The Admission of Evidence of Possession of Child Pornography

Kenner argues that the circuit court erred in admitting evidence of child pornography found on the computer in his bedroom. Kenner contends that the admission of such evidence was in error because the evidence was not relevant, and even if relevant, its probative value was substantially outweighed by the danger of unfair prejudice or its likelihood of confusing or misleading the jury.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Abdo v. Commonwealth, 64 Va. App. 468, 473 (2015) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16 (1988)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Tynes v. Commonwealth, 49 Va. App. 17, 21 (2006) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45 Va. App. 811 (2005)).

Generally, evidence of an accused's other criminal acts is "inadmissible to prove guilt of the crime for which the accused is on trial." Gonzales v. Commonwealth, 45 Va. App. 375, 380 (2005) (*en banc*). "The policy underlying the exclusion of such evidence protects the accused against unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt." Sutphin v. Commonwealth, 1 Va. App. 241, 245 (1985). However, "such evidence is admissible 'if it tends to prove any relevant element of the offense charged' or if 'the evidence is connected with or leads up to the offense for which the accused is on trial.'" Woodfin v. Commonwealth, 236 Va. 89, 95 (1988) (quoting Kirkpatrick v. Commonwealth, 211 Va. 269, 272 (1970)). In those circumstances, evidence of other crimes can be relevant

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a *modus operandi*; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

Quinones v. Commonwealth, 35 Va. App. 634, 640 (2001) (quoting Lockhart v. Commonwealth, 18 Va. App. 254, 259, opinion withdrawn and vacated on other grounds on reh'g en banc, 19 Va. App. 436 (1994), aff'd, 251 Va. 184 (1996)); see also Va. R. Evid. 2:404(b) (evidence of "other crimes" is admissible when "relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan"). Further, "where the motive, intent, or knowledge of the accused is at issue, evidence of other offenses is admissible if it shows the conduct or attitude of the accused toward his victim, establishes the relationship between the parties, or negates the possibility of accident or mistake." Moore v. Commonwealth, 222 Va. 72, 76 (1981). However, "the admission of such 'other crimes' evidence is prohibited when its only purpose is to show that the defendant has a

propensity to commit crimes or a particular type of crime and, therefore, probably committed the offense for which he is being tried." Guill v. Commonwealth, 255 Va. 134, 139 (1998).

The dissent concludes that this Court's decision in Blaylock v. Commonwealth, 26 Va. App. 579 (1998), requires reversal in this case. Although we believe that Blaylock was wrongly decided, we acknowledge the view of the dissent that if the holding in that case is applicable, it would control the analysis here by virtue of the inter-panel accord doctrine. However, in our view, neither the holding in Blaylock nor the inter-panel accord doctrine are applicable to this case for several reasons.

First, in Blaylock, the actual ground for reversing the case was that the circuit court erred in excluding reputation evidence about the victim, which was not harmless error. Id. at 586-87. The opinion in Blaylock then addressed other issues that had been raised because they "may arise upon retrial," including the admissibility of other crimes evidence. Id. at 587. Thus, the language relied upon by the dissent we consider non-binding dicta.

Second, this case presents a situation where our Supreme Court in Moore v. Commonwealth, 222 Va. 72, 76 (1981), and Ortiz v. Commonwealth, 276 Va. 705, 714 (2008), has twice held to the contrary of the holding in Blaylock. Given the clear tension between Moore, Ortiz, and Blaylock, we conclude that even if the inter-panel accord doctrine applies to Blaylock, it must give way to precedent from a higher tribunal.

Finally, the dicta in Blaylock applies only to the use of other crimes evidence as proof of intent and does not address any of the other proper uses of such evidence that are applicable in this case. Therefore, in analyzing the issue raised by Kenner's first assignment of error, we do so in the light of Moore, Ortiz, and other binding cases that deal with the admissibility of other crimes evidence.

Our Supreme Court has repeatedly recognized that other crimes evidence is admissible where it "shows motive, method, *intent*, plan or scheme, *or any other relevant element of the offense on trial*," Scott v. Commonwealth, 228 Va. 519, 527 (1984) (emphasis added), or when it "*shows the conduct or attitude of the accused toward his victim*[,] establishes the relationship between the parties[,] or negates the possibility of accident or mistake." Ortiz, 276 Va. at 714 (emphasis added) (quoting Moore, 222 Va. at 76). Evidence of other crimes is also admissible "where the evidence is connected with or leads up to the offense for which the accused is on trial." Kirkpatrick v. Commonwealth, 211 Va. 269, 272 (1970), superseded by statute on other grounds, Code § 18.2-31(8), as recognized in Commonwealth v. Smith, 263 Va. 13, 18 (2002). While the fact that the child pornography evidence in this case *could* be improperly used to show that Kenner had a propensity to sexually abuse a minor, that does not necessarily render the evidence inadmissible since a cautionary instruction, if requested, would presumably prevent consideration of other crimes evidence for that purpose. Rather, the law is clear that "if such evidence tends to prove any other relevant fact of the offense charged, and is otherwise admissible, it will not be excluded merely because it also shows [the accused] to have been guilty of another crime." Williams v. Commonwealth, 203 Va. 837, 841 (1962) (quoting Day v. Commonwealth, 196 Va. 907, 914 (1955)).

Our Supreme Court found evidence of pornographic videos to be relevant and admissible under circumstances analogous to this case. In Ortiz, the appellant assigned error to the circuit court's admission of pornographic videotapes found in his home. Ortiz, 276 Va. at 711. There, the child-victim alleged that Ortiz "showed her movies of 'grownups doing something' without clothes on." Id. The Supreme Court held that the evidence was not admitted to show a propensity to commit a crime, but rather "was relevant for one or more of the following purposes: to show the conduct or attitude of Ortiz toward the child, to prove motive or method of

committing the rape, to prove an element of the crime charged, or to negate the possibility of accident or mistake." Id. at 715. Because the videotapes corroborated the child's allegations, they were relevant to negate the possibility of accident or mistake, a defense raised by the appellant at trial. Id. at 716.

The evidence in this case was likewise relevant and admissible. As was the case in Ortiz, Kenner showed D.T. pornographic movies involving naked adults while he assaulted her. While the evidence of child pornography introduced may have shown Kenner's propensity to engage in sexual acts with a minor, the evidence was not admitted for that purpose. Instead, the evidence was relevant to show Kenner's conduct or attitude toward D.T., to prove motive or method of committing the sexual assaults, as evidence of Kenner's specific intent to engage in sex with a minor, and to corroborate D.T.'s allegations. Cf. Quinones, 35 Va. App. at 643 (holding that the trial court erred in admitting evidence that defendant owned pornographic videos where "[t]he record contain[ed] no evidence establishing a relationship between the videotapes and the charges on trial," such as evidence "that the videotapes displayed acts . . . similar to the acts [the defendant] allegedly performed on the victim," "that the tapes were ever shown to the victim or that she was aware of their existence," or "that the videotapes played any part in the event described by the victim").

The child pornography evidence was found on the same desktop computer that Kenner used to show D.T. adult pornography while he sexually assaulted her. The presence of any kind of pornography on the desktop computer corroborated D.T.'s testimony that Kenner displayed pornography on his computer while the sexual assaults occurred. Moreover, because the videos were found on the same computer and because the videos were either downloaded or attempted to be downloaded during the time frame that D.T. lived with Kenner, the child pornography evidence found in Kenner's apartment relates to and led up to the offense for which he was on

trial. Simply because this evidence may also show that Kenner generally has a prurient interest in children does not render it inadmissible. Additionally, Kenner failed to request that the jury be instructed that it could consider the evidence only for the limited purposes discussed above and no such instruction was given. Therefore, the evidence was relevant and properly admitted as other crimes evidence.

Pursuant to the inter-panel accord doctrine, the dissent relies on our decision in Blaylock, in which we held that other crimes evidence is not admissible to establish specific intent "when intent is not genuinely in dispute." Blaylock, 26 Va. App. at 590. Aside from the fact that Kenner's intent was only one of the reasons other crimes evidence was admissible in this case, we note that in Blaylock, the existence of the child pornography would only be relevant to improperly show the accused's propensity to engage in criminal activity—namely, aggravated sexual battery on a child under the age of thirteen. There were no allegations that the accused in that case viewed pornographic materials with the victim. Here, however, D.T. testified that Kenner touched her "private" while he held her on his lap and forced her to watch pornographic videos on the same computer where the bulk of the child pornography was found. Ortiz is more factually analogous to this case than Blaylock,[2] and in addition to showing Kenner's specific intent, the other crimes evidence in this case was also relevant to show Kenner's conduct or attitude toward D.T., to corroborate D.T.'s allegations, and establish the relationship between Kenner and D.T., and was connected with and led up to the offense for which Kenner was on trial, all of which are proper uses of other crimes evidence under Kirkpatrick and its progeny. Therefore, aside from the issue of intent, because the evidence was relevant to establish

---

[2] Although the "other crimes" evidence in Ortiz consisted of adult pornography, not child pornography, that difference would only be relevant to the prejudicial effect of the evidence, not its admissibility.

exceptions to the general prohibition against the use of other crimes evidence, the dicta in Blaylock ought not prohibit the admissibility of the other crimes evidence in this case.

In any event, to the extent that we may otherwise be bound by the inter-panel accord doctrine to apply Blaylock to the facts of this case, that case and Hill v. Commonwealth, 17 Va. App. 480 (1993), appear to us to conflict with precedent from our Supreme Court.

We reach the conclusion that Blaylock was wrongly decided for several reasons. As our Supreme Court made clear in Moore and Ortiz, provided a cautionary instruction is given if requested, other crimes evidence is admissible to show the conduct or attitude of the accused toward his victim, his specific intent, and any other relevant issue. Yet under Blaylock, unless the defendant concedes that he committed the acts alleged but did so without the relevant specific intent, he has not "genuinely disputed" intent and the Commonwealth may not admit other crimes evidence relevant to intent despite the fact that intent is at issue in every specific intent offense because the Commonwealth is required to prove that element. It is axiomatic that the Commonwealth is required to prove every element of a charged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 315-16 (1979). Blaylock requires the Commonwealth to wait until the defense rests to determine if it may use other crimes evidence to prove specific intent for the crime charged. This holding ignores the principle that in a trial on a plea of "Not Guilty," *unless* conceded or stipulated to by a defendant, specific intent is always "disputed" when it is an element of the offense. Therefore, as Moore and Ortiz make clear, the Commonwealth was entitled in this case to use other crimes evidence as part of its case-in-chief "to show the conduct or attitude . . . toward the child, to prove motive or method of committing the rape, to prove an element of the crime charged [*including intent*], or to negate the possibility

- 12 -

of accident or mistake," where the victim alleged Ortiz showed her videos of adult pornography.[3] Ortiz, 276 Va. at 715. To the extent that Blaylock conflicts with this straightforward approach to the admission of other crimes evidence, we conclude that it was improperly decided contrary to our Supreme Court's prior holding in Moore and/or was implicitly overruled by that Court's subsequent decision in Ortiz.

In addition to being relevant and material, other crimes evidence "is subject to the further requirement that the legitimate probative value of the evidence must exceed its incidental prejudice to the defendant." Castillo v. Commonwealth, 70 Va. App. 394, 417 (2019) (quoting Rose v. Commonwealth, 270 Va. 3, 11 (2005)). "[T]he responsibility for balancing the competing considerations of probative value and unfair prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse." Id. (alteration in original) (quoting Ortiz, 276 Va. at 715).

Here, the probative value of the evidence substantially outweighs any danger of unfair prejudice or likelihood of confusing or misleading the jury. The danger of unfair prejudice was limited by the circuit court's decision to only admit evidence of the video titles and general descriptions of the images. This limited prejudicial effect is offset by the probative value of this evidence and presumptively would have been eliminated by a cautionary instruction, if Kenner had requested one. Because there were no other witnesses and a modicum of corroborating physical evidence, any evidence that could corroborate D.T.'s testimony of abuse and negate fabrication, the predominant defense theory at trial, was highly probative. Accordingly, we hold that the circuit court did not abuse its discretion in admitting the evidence of child pornography.

---

[3] Because Ortiz raised the possibility of accident or mistake, asserting "that the child might have had sex with him without his knowledge while he was drunk and asleep because he was often drunk on weekends," thus genuinely disputing his intent under Blaylock. However, Blaylock does not conflict with the portion of Ortiz that finds the evidence relevant to show absence of mistake or accident. Ortiz, 276 Va. at 716.

## B.  Trial Counsel's Motion to Withdraw

The decision to grant or deny a motion by counsel to withdraw from the court-appointed representation of a client is committed to the sound discretion of the circuit court, and our review of the denial of such a motion is limited to determining whether the denial constituted an abuse of discretion.  Paris v. Commonwealth, 9 Va. App. 454, 460 (1990) (citing Payne v. Commonwealth, 233 Va. 460, 473 (1987)).  Trial counsel based his motion to withdraw on two grounds—that trial counsel did not have the time or resources to dedicate to Kenner's defense and that trial counsel had a conflict of interest that affected his ability to represent Kenner.

Kenner's argument that his trial counsel did not have the resources to dedicate to his defense is essentially an allegation that he received ineffective assistance of counsel.  Even if we were to assume error in not permitting withdrawal of counsel, we could not determine whether such error was harmless without examining whether counsel actually rendered "ineffective assistance."  However, claims of ineffective assistance of counsel are not properly raised on direct appeal and must be raised in a separate habeas petition to the Supreme Court or the circuit court.  (See Code § 8.01-654(A)(1).)  Appellant here attempts to bypass that rule by linking ineffective assistance to a prior ruling on requests for withdrawal of counsel.  See Hill v. Commonwealth, 8 Va. App. 60, 69 (1989) (*en banc*).  We therefore do not address the merits of this claim here.

Trial counsel's second basis for his motion to withdraw was that he had two potential conflicts of interest.  A defendant's right to counsel under the Sixth Amendment is violated by "an actual conflict of interest [that] adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 350 (1980) (emphasis added).  "[T]he possibility of conflict is insufficient to impugn a criminal conviction."  Id.  "An actual conflict of interest exists when an attorney engages in wrongful conduct related to the client's trial."  Carter v. Commonwealth, 16

- 14 -

Va. App. 42, 47 (1993) (quoting <u>United States v. Jones</u>, 900 F.2d 512, 519 (2d Cir.), <u>cert. denied</u>, 498 U.S. 846 (1990)).

When an attorney has, in fact, engaged in wrongful conduct related to his client's trial, our courts are concerned with the possibility that the attorney's fear of the wrongdoing being disclosed would preclude a vigorous defense on the client's behalf, thereby creating a conflict of interest. <u>Id.</u> (citing <u>Jones</u>, 900 F.2d at 519). However, the filing of a formal complaint alleging an ethical violation against the attorney during trial, even when filed by the defendant, does not create a *per se* conflict of interest. <u>Id.</u> (citations omitted). "Allegations of wrongdoing alone cannot rise to the level of an actual conflict unless the charges have some foundation." <u>Id.</u> (quoting <u>Jones</u>, 900 F.2d at 519). Rather, "the defendant must prove that actual wrongdoing by counsel occurred and that counsel's fear of disclosure of the wrongdoing caused counsel to be ineffective in a manner that prejudiced the trial result." <u>Id.</u> This Court will not disturb a circuit court's factual finding that no conflict of interest existed in the absence of plain error. <u>Id.</u> at 46 (citing Code § 8.01-680).

Here, when trial counsel moved to withdraw from the case, no actual conflict existed. Trial counsel cited the possibility that he could be called as a witness because it appeared that Robinson's testimony might prove adverse to Kenner. However, under <u>Cuyler</u>, the mere possibility that a witness may prove adverse is insufficient to create a conflict of interest that deprived the defendant of his Sixth Amendment right to counsel. Indeed, no actual conflict of interest ripened at trial. Similarly, the filing of a formal bar complaint against trial counsel did not create a *per se* conflict of interest. On appeal, Kenner has neither alleged any prejudice nor that the complaint had any foundation. Without more, we cannot say that the circuit court's determination that no conflict of interest existed at that time was plainly erroneous. Therefore,

- 15 -

the circuit court did not abuse its discretion in denying the motion to withdraw based on a conflict of interest at that point in time because an actual conflict had not yet ripened.

### C. Polling of the Jury

Interpretations of the rules of the Supreme Court are subject to *de novo* review. Nimety v. Commonwealth, 66 Va. App. 432, 437 (2016) (citing LaCava v. Commonwealth, 283 Va. 465, 469-70 (2012)). The rule permitting a poll of the jury provides: "*When a verdict is returned*, the jury shall be polled individually at the request of any party or upon the court's own motion. If upon the poll, all jurors do not agree, the jury may be directed to retire for further deliberations or may be discharged." Rule 3A:17(d) (emphasis added). Since the General Assembly's creation of a bifurcated proceeding, this Court has treated the guilt and sentencing phases of a jury trial as distinct. See Ford v. Commonwealth, 48 Va. App. 262, 268-69 (2006) ("In 1994, the General Assembly created two distinct stages of all felony and Class 1 misdemeanor trials—the guilt phase and the punishment phase."). Under this system, a guilty verdict becomes final when it has been ascertained by the circuit court that a jury has unanimously reached the determination of guilt and the verdict may not thereafter be disturbed, even during the punishment phase, absent exceptional circumstances. Tyler v. Commonwealth, 21 Va. App. 702, 709 (1996) (citing United States v. Powell, 469 U.S. 57, 67 (1984) ("with few exceptions . . . once the jury has heard the evidence and the case has been submitted, the litigants must accept the jury's collective judgment")). Only after the jury has found the defendant guilty does the court conduct *a separate proceeding "limited to the ascertainment of punishment*." Ford, 48 Va. App. at 268 (emphasis added) (quoting Code § 19.2-295.1; Rule 3A:17.1). This proceeding to ascertain punishment necessarily presumes a guilty verdict. Otherwise, the second proceeding would not take place.

Although the question of the timeliness of a motion to poll the jury is a matter of first impression in this Court, the statutory scheme quoted above, the Rule itself, and our precedent imply that any motion to poll the jury on their verdict during each phase of a bifurcated trial must be made before the conclusion of that phase. Thus, any motion to poll the jury regarding a defendant's guilt must be made before the guilt phase has concluded and the sentencing phase has begun. To conclude otherwise would ignore the finality of the verdict once the sentencing phase commences and would also ignore the statutory mandate that the sentencing phase of the trial is limited to determining punishment. Here, after the jury returned a verdict of guilty on all counts, Kenner failed to timely exercise his right under Rule 3A:17(d) to poll the jury regarding its guilty verdict. At that point, the guilty verdict became final. Accordingly, Kenner's motion made during the separate proceeding to determine punishment was untimely and the circuit court did not err in denying his motion.

For all of these reasons, the judgment of the circuit court is affirmed.

Affirmed.

Malveaux, J., concurring, in part, and dissenting, in part.

I concur with the majority that the trial court did not err in denying trial counsel's motion to withdraw and in denying appellant's motion to have the jury individually polled. However, because I conclude that the evidence of child pornography was not admissible under any of the "other crimes" exceptions, I respectfully dissent.

Generally, evidence of an accused's other criminal acts is "inadmissible to prove guilt of the crime for which the accused is on trial." Gonzales v. Commonwealth, 45 Va. App. 375, 380 (2005) (*en banc*). However, "such evidence is admissible 'if it tends to prove any relevant element of the offense charged' or if 'the evidence is connected with or leads up to the offense for which the accused is on trial.'" Woodfin v. Commonwealth, 236 Va. 89, 95 (1988) (quoting Kirkpatrick v. Commonwealth, 211 Va. 269, 272 (1970)). In those circumstances, evidence of other crimes can be relevant

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a *modus operandi*; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

Quinones v. Commonwealth, 35 Va. App. 634, 640 (2001) (quoting Lockhart v. Commonwealth, 18 Va. App. 254, 259, opinion withdrawn and vacated on other grounds on reh'g en banc, 19 Va. App. 436 (1994), aff'd, 251 Va. 184 (1996)); see also Va. R. Evid. 2:404(b) (evidence of "other crimes" admissible when "relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan").

- 18 -

Turning first to the issue of intent, I find a previous decision of this Court, Blaylock v. Commonwealth, 26 Va. App. 579 (1998), dispositive on this point. In Blaylock, in a trial for a charge of aggravated sexual battery, defendant did not introduce evidence "suggesting that the alleged sexual abuse took place without the requisite intent, or that the touching was the result of mistake or accident; instead, he denied the incident altogether and presented an alibi defense." Id. at 589. On appeal, defendant challenged the admission of a story "portraying a fictional adult engaging in criminal and perverted sex with a child" and photographs of child pornography, all of which were found on defendant's computer, arguing that the pornographic materials were not relevant to the determination of the intent at issue in the charged assault. Id. at 587. Our Court agreed. We noted that the Commonwealth had the burden to prove that defendant had committed the abuse with the "intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness' intimate parts" and that as in every case the Commonwealth had to prove each element of the offense beyond a reasonable doubt. Id. at 589 (quoting Code § 18.2-67.10(6)). However,

> [t]hat principle of law . . . does not mean that the Commonwealth may always offer other bad acts to prove the intent of defendants accused of specific intent crimes. If the Commonwealth's burden to prove intent were dispositive, "the general rule prohibiting introduction of prior bad acts to show character would never apply to specific intent crimes because intent would always be at issue." State v. Ives, 927 P.2d 762, 770 (Ariz. 1996).

Id. After an extended review of our own prior decisions and law from other jurisdictions, we then held that "other crimes" evidence on the issue of intent is not admissible when intent "is not genuinely in dispute." Id. at 590.

Examining the facts in Blaylock, our Court found that the issue of intent was not genuinely in dispute in defendant's trial. Rather, "the 'actual issue' was 'commission of the act itself,' rather than [defendant's] intent in committing the act." Id. at 592 (quoting Reynolds v.

- 19 -

Commonwealth, 24 Va. App. 220, 225 (1997)). Thus, because "[n]either the Commonwealth's evidence nor that developed by [defendant] puts the issue of intent in genuine dispute," the "child pornography and sexually explicit story were, on this ground, inadmissible to prove [defendant's] intent." Id. This Court further held, considering the argument that the evidence was more prejudicial than probative, that "where a defendant's intent is genuinely uncontested, any nominal probative value will be easily outweighed by the danger of prejudice." Id.

Turning to the facts of the instant case, it is clear to me that, as in Blaylock, intent was not an issue in genuine dispute at trial. This case simply involved the credibility of the victim's allegations versus appellant's complete denial that he had committed any acts of sexual abuse. Thus, the only relevant question for the jury was whether the acts alleged had actually occurred. Appellant never suggested that he had committed the alleged acts innocently, accidentally, or without lascivious intent; instead, he maintained that the acts had never occurred. As in Blaylock, the state of mind of the perpetrator was not at issue. The issue for the jury was simply whether the sexual abuse occurred. Therefore, appellant's intent was not a contested issue at trial, and as such, the evidence of child pornography was not relevant under this exception to the "other crimes" evidence rule.

On the same basis, I conclude that the evidence of child pornography was not relevant as tending to prove knowledge, or mistake or accident, because these issues were not genuinely contested at trial. Again, appellant claimed that he had not sexually abused D.T., and therefore there was no issue as to whether he had sexually abused the child either by mistake or accident, or without the requisite knowledge.

Further, the evidence of child pornography found on appellant's computer was not relevant to prove a motive to commit the acts alleged. The challenged evidence does not tend to

prove that appellant had a reason or cause to sexually abuse D.T., only that he downloaded prurient images of children.

The evidence was also not relevant to proving the conduct and feeling of the accused toward his victim, or to establishing their prior relations. The child pornography found on appellant's computer did not tend to show anything about his relationship to D.T. or his attitude toward her. While the child pornography might have tended to prove that appellant has a prurient interest in children generally, the evidence did not tend to show that appellant had a lascivious attitude toward D.T. specifically. The evidence itself did not prove anything about appellant's relationship with or prior conduct toward D.T., and thus was not admissible for that purpose.

In addition, the evidence was not relevant to prove opportunity, preparation, plan, or a common scheme or plan. Here, the child pornography evidence was in no way connected or related to D.T. The child pornography did not contain any images of or references to D.T. There was no evidence that appellant sexually abused D.T. in a manner similar to the depiction of child pornography found on the computer. Although one title indicated that the child pornography file showed a father "teaching" sex to his daughter, D.T. did not state that appellant committed the abuse in order to "teach" her sexual acts or that he sexually abused her in any instructive manner. While the child pornography found on the computer depicted adults having sex with a minor, and appellant is alleged to have sexually abused D.T., a minor, there is no indication that the abusive acts were so similar as to make the evidence probative of appellant's plan or method of abusing D.T. Further, there was no evidence that the videos of child pornography were ever shown to D.T. or that she was aware of their existence.

As I find that the evidence was not admissible under any of the applicable "other crimes" exceptions, I respectfully disagree with the majority's conclusion that the evidence was relevant

- 21 -

to show appellant's conduct or attitude toward D.T., to prove motive or method of committing the sexual assaults, and to corroborate D.T.'s allegations.

In addition, I note two other points of disagreement with the majority. First, the majority finds that the presence of "any kind of pornography" on appellant's computer corroborated D.T.'s testimony. I disagree. D.T. did state that appellant viewed pornography with her while she was in his bedroom. However, she was clear in stating that the pornography involved adults. The existence of child pornography on the computer cannot be equated to having adult pornography on the same computer. It is clear that child pornography and adult pornography are separate and distinct, as obvious from the fact that possession of adult pornography is not illegal. Because of the distinct nature between the two types of pornography, the evidence of child pornography on appellant's computer was not admissible to corroborate D.T.'s allegation that she watched adult pornography with appellant during the time period that the abuse was being committed.

Second, the majority also asserts that this case is more factually analogous to a decision of our Supreme Court, Ortiz v. Commonwealth, 276 Va. 705 (2008), than to Blaylock. However, the present case is clearly distinguishable from Ortiz. In Ortiz, defendant was convicted of raping his step-grandchild. Id. at 709-10. On appeal to our Supreme Court, he challenged the admission of three pieces of evidence: the child victim's testimony about ongoing sexual abuse by defendant during the period of time that she was raped, as alleged in the indictment; two adult pornographic videotapes; and a drugstore receipt for a vaginal cream product. Id. at 713-14. In discussing the two pieces of physical evidence—the videotapes and the receipt—the Court first assumed that the items, though not illegal, constituted evidence of other crimes. Id. at 715. It then noted that the victim told police and also testified at trial that defendant "showed her tapes of 'grownups doing something' without clothes on and put cream

on her private parts." Id. at 716. The Court held that the videotapes and receipt corroborated the victim's allegations and thus were "relevant to negate the possibility of accident or mistake raised by [defendant]" who had told police that the victim "might have had sex with him without his knowledge while he was drunk and asleep." Id.

Here, in contrast, there is no indication in the record that the victim watched child pornography with appellant. Thus, the evidence of child pornography was not admissible to corroborate her allegations. Further, appellant never claimed that the sexual abuse could have occurred by accident or mistake, so the evidence was not admissible as relevant to negate any such claims.

Based upon the specific facts of this case, I conclude that the evidence of the presence of child pornography on appellant's computer did not tend to prove any issue at trial. The child pornography found on the computer did not make it more or less likely that appellant sexually abused D.T. Rather, appellant's possession of child pornography proved no more than a predisposition for obscenity and a salacious interest in children at the time of possession. Because the "other crimes" evidence in this case did not meet an exception to the rule prohibiting its introduction, I would hold that that trial court abused its discretion in admitting the Commonwealth's exhibits relating to child pornography found on appellant's computer.

I would also hold that this error was not harmless. "Code § 8.01-678 makes 'harmless-error review required in *all* cases.'" Commonwealth v. Swann, 290 Va. 194, 200 (2015) (quoting Ferguson v. Commonwealth, 240 Va. ix, ix (1990)). Because we hold that the trial court erred in admitting evidence, the non-constitutional standard for harmless error applies. Salahuddin v. Commonwealth, 67 Va. App. 190, 211-12 (2017). A non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Turman v.

*Commonwealth*, 276 Va. 558, 567 (2008) (quoting Code § 8.01-678). Thus, an appellate court "may uphold a decision on the ground that any evidentiary error involved is harmless if it can conclude 'that the error did not influence the jury[ ] or had but slight effect.'" *Salahuddin*, 67 Va. App. at 212 (alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)). However, if the appellate court "cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that [appellant's] substantial rights were not affected," the conviction must be reversed. *Clay*, 262 Va. at 260 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

Applying these standards, I cannot say based on this record that the trial court's admission of the "other crimes" evidence was harmless. This case rested on the jury's determination of the credibility of the child victim versus the credibility of appellant's testimony that he did not commit the sexual abuse. The introduction of the child pornography evidence was highly prejudicial to appellant and could have led the jury to improperly conclude that, because he had sexually explicit videos of child pornography on his computer, appellant had committed the alleged sexual abuse.[4] Here, "the tendency of the . . . sexually explicit [materials] to divert the jury and inject extraneous considerations into the fact[ ]finding process, as well as the inherently inflammatory character of the evidence, was clear." *Blaylock*, 26 Va. App. at 592. Thus, I am unable to conclude, without usurping the jury's fact finding function, that the error in admitting the evidence of child pornography "did not influence the jury[ ] or had but slight effect." *Salahuddin*, 67 Va. App. at 212 (alteration in original) (quoting *Clay*, 262 Va. at 260).

---

[4] In addition, the Commonwealth's attorney mentioned the child pornography evidence in her opening and closing statements. The Commonwealth's attorney's emphasis of this particular evidence further supports the conclusion that its admission cannot be considered harmless in this case.

Accordingly, I would reverse appellant's conviction and remand for a new trial if the Commonwealth be so advised.  Therefore, I respectfully dissent.